**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DAVID E. WELCH, CPA,
                    *Petitioner,*

v.

ELAINE L. CHAO, SECRETARY OF
LABOR, UNITED STATES
DEPARTMENT OF LABOR,
                    *Respondent,*

CARDINAL BANKSHARES CORPORATION,
          *Intervenor-Respondent.*

GOVERNMENT ACCOUNTABILITY
PROJECT; NATIONAL WHISTLEBLOWER
CENTER; TAXPAYERS AGAINST FRAUD,
        *Amici Supporting Petitioner,*

AMERICAN ASSOCIATION OF BANK
DIRECTORS; VIRGINIA ASSOCIATION OF
COMMUNITY BANKS; VIRGINIA
BANKERS ASSOCIATION,
        *Amici Supporting Respondent,*

SECURITIES AND EXCHANGE
COMMISSION,
                    *Amicus Curiae.*

No. 07-1684

On Petition for Review of an Order of the
United States Department of Labor.
(2003-SOX-15)

Argued: May 14, 2008

Decided: August 5, 2008

Before MOTZ, Circuit Judge, HAMILTON, Senior Circuit Judge, and Claude M. HILTON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in which Senior Judge Hamilton and Senior Judge Hilton joined.

_____

## COUNSEL

**ARGUED:** David B. Shine, Donald Franklin Mason, Jr., SHINE & MASON, Kingsport, Tennessee, for Petitioner. Barbara Eby Racine, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. Joseph Michael Rainsbury, LECLAIR RYAN, PC, Roanoke, Virginia, for Intervenor. **ON BRIEF:** Gregory F. Jacob, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Ellen R. Edmond, Counsel for Whistleblower Programs, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondent. Douglas W. Densmore, LECLAIR RYAN, PC, Roanoke, Virginia; Betty Southard Murphy, Marc A. Antonetti, BAKER & HOSTETLER, LLP, Washington, D.C., for Intervenor. Paul Taylor, TAYLOR & ASSOCIATES, Burnsville, Minnesota; Jason M. Zuckerman, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for The Government Accountability Project, The National Whistleblower Center, and Taxpayers Against Fraud, Amici Supporting Petitioner. Arthur P. Strickland, Roanoke, Virginia, for American Association of Bank Directors, Amicus Supporting Respondent. A. Peter Brodell, WILLIAMS MULLEN, PC, Richmond, Virginia; Joseph E. Spruill, III, VIRGINIA BANKERS ASSOCIATION, Glen Allen, Virginia, for Virginia Bankers Association and Virginia Association of Community Banks, Amici Supporting Respondent. Brian G. Cartwright, General Counsel, Andrew N. Vollmer, Deputy General Counsel, Jacob H. Stillman, Solicitor, Mark Pennington, Assistant General Counsel, SECURITIES AND EXCHANGE COMMISSION, Washington, D.C., for Securities and Exchange Commission, Amicus Curiae.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

David E. Welch appeals a final order of the Administrative Review Board (ARB) finding that his discharge by Cardinal Bankshares Corporation did not violate the whistleblower protection provision of the Sarbanes-Oxley Act. For the reasons set forth within, we affirm.

I.

Cardinal Bankshares Corporation is a bank holding company with its common stock listed on the NASDAQ Bulletin Board. As of December 31, 2001, Cardinal had outstanding over 1.5 million shares of common stock, held by approximately 600 stockholders of record. Cardinal is the sole owner of a single financial institution, the Bank of Floyd. Cardinal and the Bank of Floyd share a Board of Directors and managing officers, and Ronald Leon Moore serves as the Chief Executive Officer of both entities. Hereinafter, we refer to the Bank of Floyd and Cardinal interchangeably as "Cardinal."

Welch, the petitioner in this case, is licensed as a certified public accountant in Virginia and holds a bachelor's and a master's degree in business administration. Welch began working for Cardinal in 1999 as a part-time accounting officer, and, in 2000, Moore hired Welch as Cardinal's Chief Financial Officer (CFO). Welch's responsibilities as CFO of Cardinal included preparing and reviewing entries on Cardinal's general ledger accounts; devising and implementing accounting procedures; and preparing various reports and financial statements, including the 10-QSB quarterly reports and 10-K annual reports that Cardinal is required to submit to the Securities and Exchange Commission (SEC), *see* 15 U.S.C. §§ 78*l*-78m (2000).

Welch came to believe that Cardinal's accounting practices were seriously deficient in several respects. According to Welch, Moore and others who lacked accounting expertise routinely made entries in Cardinal's general ledger; Welch asserts that this practice itself violated generally accepted accounting principles (GAAP). He also contends that this practice resulted in ledger entries that violated GAAP.

Most notably, on one specific occasion, Cardinal recovered two loans that it had previously written off, expecting that they would not be recouped. Cardinal recorded the unexpected recovery of these written-off loans, totaling $195,000, as income; Welch maintains that GAAP does not permit such recovered loans to be reported as income and instead requires that they be listed on a company's loan reserve account. Welch attempted to change the ledger entries so that the loans would be recorded in the loan reserve account instead of as income, but Moore refused to authorize these changes. According to Welch, these incorrect entries caused Cardinal to overstate its year-to-date income by $195,000 in its 2001 third-quarter 10-QSB report to the SEC. Larrowe & Co., PLC, Cardinal's independent auditor, eventually corrected these entries in Cardinal's annual report during the 2001 year-end audit, but neither Cardinal nor Larrowe & Co. ever submitted a corrected third-quarter 10-QSB report to the SEC.

Finally, Welch claims that Moore would often communicate directly with Larrowe & Co. about financial matters without including Welch. Welch alleges that by so excluding him, Moore restricted his access to Larrowe & Co., and that this "restricted access" prevented him from performing his tasks as CFO and prevented him from confirming the accuracy of Cardinal's financial reports.

Welch forcefully communicated his concerns about these assertedly improper accounting practices in multiple formal memoranda to Moore and others immediately following the July 30, 2002, effective date of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745. Welch also contends that he raised these concerns orally with Moore and others as they arose in 2001.[1]

On August 2, 2002, Welch informed Larrowe & Co. in writing that he could not sign a representation letter to Larrowe & Co. confirming

---

[1]Additionally, in October 2001, Welch sent a memorandum to Moore advising that he had done "some research on the internet" concerning insider trading and that "[Moore's] personal trades and some of [Moore's] friends' trades" were "questionable." Welch testified that he later filed a complaint with the SEC accusing Moore of insider trading, but the SEC did not take any action on the complaint. Welch does not pursue any asserted insider trading violations on appeal.

that Cardinal provided Larrowe & Co. with accurate financial information for the first and second quarters of 2002, because Moore and others had made ledger entries without his supervision and because Moore and Larrowe & Co. had excluded him from their "communications loop" on various issues.

On August 14, 2002, Welch refused to certify Cardinal's 2002 second-quarter 10-QSB report to the SEC, as required by the Sarbanes-Oxley Act. In a memorandum explaining his refusal to certify the quarterly report, Welch claimed that he could not certify to the accuracy of the company's financial reports because, among other concerns, unauthorized persons had recorded ledger entries. Welch identified the entry as income of the $195,000 in recovered loans as evidence of the inaccuracies he believed this practice had caused. Moore ultimately certified Cardinal's quarterly report himself, because Welch refused to do so.

On September 13, 2002, Welch submitted another formal memorandum to Moore, insisting that Cardinal needed to change its accounting practices before Welch could certify the pending 2002 third-quarter 10-QSB report to the SEC. Welch again complained about the entry of the $195,000 in recovered loans as income, this time arguing that Cardinal needed to correct its 2001 third-quarter 10-QSB report that listed the $195,000 as income; Welch also repeated his complaints that Moore had excluded him from communications with Larrowe & Co. and that unauthorized persons had made ledger entries.

Following this barrage of criticism, Welch's relationship with Moore deteriorated rapidly. On September 17, 2002, Moore called a meeting of Cardinal's Board of Directors to discuss Moore's dissatisfaction with Welch. Moore related to the Board the content of Welch's memoranda and his belief that Welch's concerns were unfounded. Moore also reported that in August 2002, state examiners had found numerous errors in a quarterly call report that Welch had prepared and submitted to the Federal Reserve and the Virginia State Corporation Commission. In addition, Moore related that the examiners had commented that many of the "charts, graphs, and spreadsheet reports" prepared by Welch were "unnecessary and time-consuming." Moore advised the Board that "the situation has deteriorated to the

point that Mr. Welch seems to have become disaffected and apparently is unwilling or unable to do what needs to be done to comply with the law." The Board decided to ask the Audit Committee's legal counsel, Douglas Densmore, and outside auditor, Michael Larrowe, to investigate and prepare a report on Welch's assertions, including his claim that Cardinal needed to correct its third-quarter 2001 SEC report because Cardinal had improperly reported the $195,000 in recovered loans as income.

On September 20, 2002, Welch held what he characterized as a "Sarbanes-Oxley briefing" for senior personnel at Cardinal. During this briefing, Welch alleged that three Cardinal employees were "parties to fraudulent acts," outlined his belief that Cardinal's accounting practices violated the Sarbanes-Oxley Act, and proposed that he leave Cardinal quietly upon receipt of a generous severance package. Following the meeting, Densmore and Larrowe attempted to meet with Welch to discuss his charges, but Welch repeatedly refused to meet with them without his personal attorney.

At a meeting of Cardinal's Board of Directors on September 25, 2002, the Board voted to suspend Welch without pay pending the results of Densmore and Larrowe's investigation. Following his suspension, the Board ordered Welch to meet with Densmore and Larrowe without counsel to discuss his accusations, but Welch again refused to meet without his attorney.

On October 1, 2002, Densmore and Larrowe presented the results of their investigation to the Board. They concluded that Welch's concerns regarding Cardinal's accounting practices lacked merit. They also concluded that Welch had seriously breached his fiduciary duty to Cardinal by refusing to meet with them to discuss his charges, and they recommended that Cardinal discharge him. The Board unanimously voted to discharge Welch, effective immediately.

Welch then filed a complaint with the Occupational Safety and Health Administration (OSHA), alleging that Cardinal had dismissed him in violation of the whistleblower protection provision of § 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (Supp. V 2005). Welch alleged that his various communications to Cardinal constituted protected activity under the Sarbanes-Oxley Act and that Cardinal fired

him because of this protected activity. Based on an investigation by OSHA, the Secretary of Labor dismissed the complaint, finding that, although Welch engaged in protected activity, Cardinal did not fire him because of that activity. Rather, the Secretary found that Cardinal fired Welch because Welch refused to meet with Densmore and Larrowe without counsel, which the Secretary concluded constituted a legitimate reason for Welch's discharge.

Welch appealed and requested a hearing before an administrative law judge (ALJ). *See* 29 C.F.R. § 1980.106 (2007). Following the hearing, the ALJ issued a recommended decision and order, finding that at least three of the concerns that Welch communicated to Cardinal constituted protected activity under the Sarbanes-Oxley Act. Specifically, the ALJ found that the Sarbanes-Oxley Act protected Welch's communications about: (1) Cardinal's entry of the $195,000 in recovered loans as income; (2) Cardinal's general practice of allowing persons without accounting expertise to make ledger entries; and (3) Welch's "restricted access" to Larrowe & Co. The ALJ found that Cardinal fired Welch because of these protected activities and ordered him reinstated with back pay. The ALJ later issued a supplemental recommended decision and order, stipulating the amount of back pay to which the judge found Welch entitled.

Cardinal appealed the ALJ's order to the ARB, which reversed, finding as a matter of law that none of Welch's communications constituted protected activity under the Sarbanes-Oxley Act and dismissing Welch's complaint. Welch appeals.

## II.

The Sarbanes-Oxley Act creates "whistleblower" protection for employees of publicly-traded companies by prohibiting employers from retaliating against employees because they provided information about potentially unlawful conduct. Specifically, the Sarbanes-Oxley Act provides:

> No [publicly-traded company], or any officer [or] employee . . . of such company, may discharge . . . an employee . . . because of any lawful act done by the employee —

(1) to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information . . . is provided to . . .

. . . a person with supervisory authority over the employee . . . .

18 U.S.C. § 1514A(a); *see also Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 (4th Cir. 2008); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475 (5th Cir. 2008).

The whistleblower protection provision of the Sarbanes-Oxley Act adopts the burden-shifting framework applicable to whistleblower claims brought under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b) (2000). *See* 18 U.S.C. § 1514A(b). Accordingly, an employee bears the initial burden of making a prima facie showing of retaliatory discrimination; the burden then shifts to the employer to rebut the employee's prima facie case by demonstrating by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity. 49 U.S.C. § 42121(b)(2)(B).

The Department of Labor (DOL) regulations implementing § 1514A provide that in order to make a prima facie showing, an employee's complaint must allege that: (1) the employee engaged in protected activity; (2) the employer knew, actually or constructively, of the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the personnel action. 29 C.F.R. § 1980.104(b)(1) (2007).

To satisfy the first element and establish that he engaged in protected activity, an employee must show that he had both "a subjective belief and an objectively reasonable belief" that the conduct he complained of constituted a violation of relevant law. *Livingston*, 520 F.3d at 352. Additionally, an employee must show that his communi-

cations to his employer "definitively and specifically relate[d]" to one of the laws listed in § 1514A. *Platone v. FLYi, Inc.*, ARB Case No. 04-154, slip op. at 17 (ARB Sept. 29, 2006) (internal quotation marks omitted). The ARB held that Welch failed to make out a prima facie case because he did not establish that he had engaged in protected activity; the ARB did not make any determination as to the other three elements necessary for a prima facie case.

Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2006) — which governs our review here, *see* 49 U.S.C. § 42121(b)(4)(A) — we may only disturb the ARB's decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." We review questions of law *de novo*, giving deference to the ARB's interpretation of § 1514A. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 476 U.S. 837, 843-44 (1984).[2] On questions of fact, we will uphold the ARB's findings if supported by substantial evidence. *See Knox v. U.S. Dep't of Labor*, 434 F.3d 721, 723-24 (4th Cir. 2006).

III.

Before turning to the central dispute here — whether the ARB erred in holding that Welch had failed to establish that his communications constituted protected activity under § 1514A — we briefly address contentions made by the parties as to the standard for establishing protected activity.

---

[2]The Supreme Court has recognized that *Chevron* deference is appropriate when it appears from the "statutory circumstances that Congress would expect the agency to be able to speak with the force of law." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). The Court has instructed that "[i]t is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure" such as formal adjudication. *Id.* at 230 & n.12. Congress explicitly delegated to the Secretary of Labor authority to enforce § 1514A by formal adjudication, *see* 18 U.S.C. § 1514A(b), and the Secretary has delegated her enforcement authority to the ARB, *see* 67 Fed. Reg. 64,272, 64,273 (Oct. 17, 2002). Thus, we afford deference to the ARB's interpretation of § 1514A of the Sarbanes-Oxley Act. Welch does not argue to the contrary.

Cardinal initially argues that *Livingston* holds that the Sarbanes-Oxley Act only protects communications relating to *material* violations of a listed law. As Cardinal itself concedes, however, in *Livingston*, we merely noted that a statement or omission must concern a material fact to violate § 10(b) of the Securities Exchange Act and SEC Rule 10b-5. 520 F.3d at 355. Although many of the laws listed in § 1514A of the Sarbanes-Oxley Act contain materiality requirements, nothing in § 1514A (nor in *Livingston*) indicates that § 1514A contains an *independent* materiality requirement.[3]

The parties' remaining contentions involve the ARB's interpretation of § 1514A to require that an employee's communications to his employer "definitively and specifically relate" to one of the listed laws for these communications to constitute protected activity. *See, e.g.*, *Platone*, ARB Case No. 04-154, slip op. at 17 (internal quotation marks omitted). This requirement ensures that an employee's communications to his employer are factually specific. An employee need not "cite a code section he believes was violated" in his communications to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal. *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006); *see also Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 931 (11th Cir. 1995) (considering standard for protected activity under the whistleblower provisions of the Energy Reorganization Act, 42 U.S.C. § 5851). "[G]eneral inquiries do not constitute protected activity." *Fraser*, 417 F. Supp. 2d at 322 (internal quotation marks, omissions, and citations omitted).

---

[3]Relying on dicta in *Livingston*, 520 F.3d at 351 & n.1, Cardinal also contends that § 1514A only protects communications concerning violations of SEC rules or regulations that "relate to fraud" and that the asserted violations raised by Welch do "not relate to fraud." Welch counters that we did not so hold in *Livingston*, and would not so hold now if squarely presented with the question, *see, e.g.*, *O'Mahony v. Accenture Ltd.*, 537 F. Supp. 2d 506, 516-17 (S.D.N.Y. 2008), and that in any event his communications do relate to fraud. We need not resolve this question here, however, because, as discussed below, Welch failed to explain to the ARB how he could have had an objectively reasonable belief that Cardinal violated *any* potentially relevant law, whether or not it related to fraud.

Welch maintains that by requiring his communications to "definitively and specifically relate" to a listed law, the ARB has interpreted § 1514A to require that an employee complain of an *actual* violation of a listed law in order to engage in protected activity, and that such a requirement contradicts the text of the statute, which provides that an employee who complains of conduct that he "reasonably believes" violates a listed law engages in protected activity. 18 U.S.C. § 1514A(a)(1). We agree that such a requirement *would* contradict the text of § 1514A, but the "definitively and specifically" language does *not* in fact require that an employee complain of an *actual* violation. Indeed, the ARB has squarely held that § 1514A protects an employee's communications based on a reasonable, but mistaken, belief that conduct constitutes a securities violation. *See Halloum v. Intel Corp.*, ARB Case No. 04-068, slip op. at 6 (ARB Jan. 31, 2006); *accord Allen*, 514 F.3d at 477.

Cardinal also misreads the "definitively and specifically" language, though in a different manner. Cardinal contends that the "definitively and specifically" language imposes a heightened pleading standard in Sarbanes-Oxley whistleblower cases. The ARB, however, has held that, for the requirement that an employee's communications "definitively and specifically relate" to a listed law, the "relevant inquiry" is what an employee "actually communicated to [his] employer prior to the . . . termination"; it is "*not* what [is] alleged in [the employee's] OSHA complaint." *Platone*, ARB Case No. 04-154, slip op. at 17 (emphasis added). Thus, contrary to Cardinal's assertions, the "definitively and specifically" language clearly does not impose a heightened pleading standard in Sarbanes-Oxley whistleblower cases.

Accordingly, we turn to the central issue in this case — whether Welch established that his communications constituted activity protected by § 1514A.

IV.

The ARB held that Welch had failed to establish that any of his communications constituted protected activity under § 1514A of the Sarbanes-Oxley Act. The ARB offered two rationales for its holding; both relate to the requirement that Welch have an objectively reasonable belief that the challenged conduct violated relevant law.

Although we must reject the first rationale, we find no error in the second.

### A.

The ARB initially held, as a matter of law, that Welch could not have had an objectively reasonable belief that reporting the $195,000 in recovered loans as income violated relevant law.[4] The ARB reasoned that even if Cardinal erroneously reported the $195,000 as income instead of recording it in the loan reserve account, the erroneous entries still showed that "Cardinal had in fact recovered $195,000 that it previously did not have," and that therefore Welch could not have had an objectively reasonable belief that the loan entries might mislead investors.

The ARB suggested that the misclassification of items in a financial statement can *never* "present[ ] potential investors with a misleading picture of [a company's] financial condition," so long as the misclassification does not affect the "bottom line." We disagree. As

---

[4]In order for an employee to prove that he engaged in protected activity, he must show that he possessed both a subjective belief and an objectively reasonable belief that the conduct complained of constituted a violation of relevant law. *Livingston*, 520 F.3d at 352; *Melendez v. Exxon Chems. Ams.*, ARB Case No. 96-051, slip op. at 25-29 (ARB July 14, 2000). Thus, the employee must show both that he actually believed the conduct complained of constituted a violation of pertinent law and that "a reasonable person in his position would have believed that the conduct constituted a violation." *Livingston*, 520 F.3d at 352; *accord Allen*, 514 F.3d at 477.

Welch argues that the ARB erroneously held that objective reasonableness is *always* a question of law. We agree that the ARB would have erred if it had so held, because objective reasonableness is a mixed question of law and fact. But the ARB did not hold that objective reasonableness is *always* a question of law. Rather, the ARB decided the question of objective reasonableness as a matter of law *in this case*, as we did in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006). As in *Jordan*, the ARB applied the familiar rule that issues may be decided as a matter of law if the facts cannot support a verdict for the non-moving party. *Accord Livingston*, 520 F.3d at 353-56; *Allen*, 514 F.3d at 477-78.

the SEC has explained in its amicus brief, "'[t]he individual items, subtotals, or other parts of a financial statement may often be more useful than the aggregate to those who make investment, credit, and similar decisions.'" Statement of the SEC, Amicus Curiae, in Support of Neither Side at 3 (quoting the Financial Accounting Standards Board, Statement of Financial Accounting Concepts No. 5, Recognition and Measurement of Financial Statements of Business Enterprises 15-16, ¶ 22 (Dec. 1984)) (emphasis omitted). Thus, as the Department of Labor now concedes, communications about misclassifications in financial statements *may*, in some circumstances, form the basis for a Sarbanes-Oxley whistleblower action, and the ARB erred to the extent that it held to the contrary. Were this the *only* rationale for the ARB's holding, we would have to remand to allow the ARB to determine whether Welch could have reasonably believed that *this* misclassification violated relevant law.

### B.

The ARB offered a second rationale for its dismissal of Welch's complaint, however. The ARB held that even if Welch's charges proved correct — that Cardinal reported the $195,000 as income in violation of GAAP, that Cardinal improperly restricted Welch's access to Larrowe & Co., and that Moore permitted individuals without expertise to make ledger entries — Welch had nonetheless failed to explain to the ARB how he could have had an objectively reasonable belief that these actions violated any of the laws listed in § 1514A.

After the ALJ ruled in favor of Welch, Cardinal filed a petition for review with the ARB, taking exception to the ALJ's findings of fact and conclusions of law, pursuant to 29 C.F.R. § 1980.110 (2007). Cardinal specifically took issue with the ALJ's rulings that Welch had an objectively reasonable belief that his communications identified violations of federal securities laws. *See* Resp't's Pet. for Review at ¶¶ 2, 4, 5 (Feb. 25, 2005). Cardinal argued that:

> The ALJ erred in finding protected activity because Welch's complaints . . . did *not* allege conduct that constituted a violation of, or even a reasonably perceived violation of, federal securities laws. Conspicuously absent from the ALJ's

analysis is any explanation of how the conduct Welch complained about constituted a violation of federal securities laws.

Br. of Resp't at 11, Welch v. Cardinal Bankshares Corp., ARB Case No. 05-064 (ARB May 31, 2007). Cardinal stressed that the ALJ had cited "no authority" to support the proposition that the identified conduct violated federal securities laws. *Id.* at 18; *see also id.* at 16 (asserting that Welch's communications "did not allege a violation of federal securities law" and that "[t]he ALJ fails to point to a single statute, regulation, or case" in support of his holding).

In his response before the ARB, Welch defended the ALJ's holding, but, like the ALJ, he utterly failed to explain how Cardinal's alleged conduct could reasonably be regarded as violating any of the laws listed in § 1514A. Although Welch advanced several arguments before the ARB, he supported these arguments only with irrelevant and inapposite authority or conclusory, general statements.[5] The ARB therefore held that Welch had failed to establish that he engaged in protected activity. We find no error in this ruling. *See, e.g., Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 861 n.8 (10th Cir. 2007) (explaining that the ARB is not required to "*sua sponte* raise legal theories referenced only obliquely by a party but not clearly articulated in its briefs"); *cf.* Fed. R. App. P. 28(b), (a)(9)(A) (requiring the appellee's brief to contain an argument, which must, in

---

[5]For example, before the ARB, to support his contentions regarding the $195,000 in recovered loans in the 2001 third-quarter 10-QSB report, Welch relied on laws and regulations passed years *after* the filing of that report, as well as other regulations which clearly do not fall within the purview of § 1514A. He also cited to general accounting standards and the general purpose of the securities laws. He did not explain — as he attempts to on appeal — how a person could reasonably believe that the failure to correct the 10-QSB report might violate any relevant federal law or applicable SEC regulation. Similarly, with regard to Cardinal's practice of allowing individuals without accounting expertise to make ledger entries, before the ARB, Welch cited accounting treatises and insisted that the practice "violat[ed] the intent of the SEC rules and regulations," but he never explained how a person could have an objectively reasonable belief that this conduct violated any of the laws listed in § 1514A.

turn, include "citations to the authorities and parts of the record on which [that party] relies").

To the extent that Welch *now* explains his position and cites to relevant authority in his filings before this court, he attempts to raise new arguments relying on newly identified authorities. Welch has forfeited these new arguments by failing to raise them before the ARB. *See, e.g.*, *Taylor v. U.S. Dep't of Labor*, 440 F.3d 1, 8-9 (1st Cir. 2005).

Of course, we do not suggest that a whistleblower must identify specific statutory provisions or regulations when complaining of conduct to an employer, nor do we address the burden upon the parties in the proceedings *before the ALJ*. *See* 29 C.F.R. §§ 1980.103-109 (2007). We simply hold that Welch completely failed to raise any relevant arguments before the ARB and may not now raise new arguments before this court.

## V.

For the reasons set forth above, the judgment of the Administrative Review Board is

*AFFIRMED*.