**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID R. STONE,

*Plaintiff-Appellant,*

v.

INSTRUMENTATION LABORATORY
COMPANY; BRIAN DURKIN; ANN
DEFRONZO; RAMON BENET,

*Defendants-Appellees,*

and

INSTRUMENTATION LABORATORY SPA,

*Defendant.*

No. 08-1970

GOVERNMENT ACCOUNTABILITY
PROJECT; NATIONAL WHISTLEBLOWER
LEGAL DEFENSE AND EDUCATION
FUND,

*Amici Supporting Appellant.*

DAVID R. STONE,

Plaintiff-Appellant,

v.

INSTRUMENTATION LABORATORY
COMPANY; BRIAN DURKIN; ANN
DEFRONZO; RAMON BENET,

Defendants-Appellees,

and

INSTRUMENTATION LABORATORY SPA,

Defendant.

No. 08-2196

GOVERNMENT ACCOUNTABILITY
PROJECT; NATIONAL WHISTLEBLOWER
LEGAL DEFENSE AND EDUCATION
FUND,

Amici Supporting Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:07-cv-03191-WDQ)

Argued: September 23, 2009

Decided: December 31, 2009

Before NIEMEYER and SHEDD, Circuit Judges,
and Mark S. DAVIS, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Davis wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

## COUNSEL

**ARGUED**: Adam Augustine Carter, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant. Robert Michael Shea, MORSE, BARNES-BROWN & PENDLE-TON, PC, Waltham, Massachusetts, for Appellees. **ON BRIEF:** R. Scott Oswald, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant. Scott J. Connolly, MORSE, BARNES-BROWN & PENDLETON, PC, Waltham, Massachusetts, for Appellees. Richard R. Renner, NATIONAL WHISTLEBLOWER LEGAL DEFENSE AND EDUCATION FUND, Washington, D.C.; Thomas Devine, Legal Director, Kasey Dunton-Dermont, GOVERNMENT ACCOUNTABILITY PROJECT, Washington, D.C., for Amici Supporting Appellant.

## OPINION

DAVIS, District Judge:

In this appeal, we address the interpretation of a provision of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, governing the filing of whistleblower lawsuits in federal district court. The parties acknowledge that the Sarbanes-Oxley Act expressly provides a United States District Court jurisdiction to entertain a whistleblower action. However, they disagree as to whether a whistleblower plaintiff, during the pendency of an administrative appeal of an Administrative Law Judge's ("ALJ") ruling, has the right to a *de novo* proceeding in district court. In the absence of guidance from this Court, or other circuit courts, the district court granted the defendants'

motion to dismiss the district court action in favor of remand to the appropriate administrative body for further proceedings. In light of the language of the statutory provisions at issue, we reverse the district court and remand for further proceedings consistent with this opinion.

I.

David Stone ("Stone" or "Appellant") was employed by Instrumentation Laboratory Company ("ILC") from 1999 through 2006. ILC is in the business of developing, manufacturing, and distributing critical care and diagnostic instruments, as well as other related products and services, for use primarily in hospital laboratories. Stone began as an ILC Sales Representative in 1999, was promoted to Sales Manager in 2002, and was again promoted in 2005 to Director of National Accounts. During his employment at ILC, Stone received numerous accolades for his performance.[1]

As Director of National Accounts, one of Stone's responsibilities was working with Group Purchasing Organizations ("GPOs"), which are strategic affiliations of hospitals that concentrate buying power in order to negotiate lower prices. ILC had contracts with various GPOs requiring that, among other things, ILC maintain a GPO membership database, offer contractually negotiated prices and terms to GPO members, and pay administrative fees to GPOs equal to three percent of sales revenue generated from member purchases. ILC has acknowledged in public disclosures to shareholders that GPOs are a critical part of its distribution strategy.

After assuming his role as Director of National Accounts,

---

[1]As the instant appeal challenges the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), "we accept as true all well-pleaded allegations and view the complaint in the light most favorable to [Stone]." *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

Stone learned that Brian Durkin ("Durkin"), one of Stone's superiors at ILC, was not accurately tracking, reporting, and paying the required administrative fees to GPOs. Durkin's omissions resulted in a multi-year cumulative liability of at least half a million dollars and threatened ILC's ability to sell products to most of its customers. Stone's Complaint asserts that Durkin's failure to maintain adequate internal controls and track administrative fees resulted in ILC "misrepresenting its financial condition to shareholders." (Compl. ¶ 70.) Stone's discovery regarding administrative fees prompted him to perform additional investigation into ILC's internal controls, and such investigation revealed numerous weaknesses.

From September of 2005 until March of 2006, Stone repeatedly voiced his concerns about deficient internal controls and unpaid GPO fees to Durkin and two other ILC managers.[2] Stone's efforts were repeatedly met with resistance and even unequivocal refusals to correct the problems. Stone contends that Appellees retaliated against him after he brought such deficiencies to light, and that such retaliation culminated in Stone's termination in March of 2006.

## II.

## A.

On June 19, 2006, pursuant to the Sarbanes-Oxley Act, Stone filed a retaliation claim with the Occupational Safety and Health Administration ("OSHA"), which hears such claims on behalf of the Secretary of Labor ("the Secretary"). OSHA issued its preliminary findings on January 3, 2007, more than 180 days after Stone's claim was filed. Pursuant to the governing regulations, Stone timely objected to OSHA's findings and requested a hearing before an ALJ. On March 1,

---

[2]Stone's Complaint names all three superiors as defendants: Brian Durkin, Ann DeFronzo, and Ramon Benet. ILC and the individually named ILC managers are referred to herein collectively as "Appellees."

2007, Appellees filed a motion for summary decision before the ALJ. In response, Stone moved to delay consideration of such motion to permit him to take discovery. Stone's motion for discovery was denied,[3] and the ALJ granted Appellees' motion for summary decision on September 6, 2007. Stone thereafter successfully petitioned the Administrative Review Board ("ARB") for review of the ALJ's order. On October 1, 2007, the ARB established a briefing schedule, which was thereafter modified by the ARB on Stone's motion.

On November 8, 2007, more than a month before Stone's initial brief was due under the modified briefing schedule, Stone filed a notice with the ARB stating his intention to bring a *de novo* action in federal district court. The ARB then issued an order to show cause why the administrative appeal should not be dismissed. After Appellees failed to respond, and after receiving notice from Stone that he had in fact filed suit in federal court, the ARB dismissed the administrative appeal. Such dismissal was not based on the merits, but appears to be an acknowledgment that, no "bad faith" having been alleged by ILC, the ARB lost jurisdiction over the matter once Stone's complaint was filed in district court.

B.

Stone's Sarbanes-Oxley Act whistleblower suit was filed in the United States District Court for the District of Maryland on November 26, 2007. On March 27, 2008, Appellees timely filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). After the matter was fully briefed, on July 1, 2008, the district court granted such motion based on preclusion principles, finding that the ALJ's ruling was a "final

---

[3]Stone had previously agreed, during a telephone status conference, that discovery would be stayed pending the ALJ's ruling on the motion for summary decision. Notwithstanding such inconsistent positions, there is no allegation that Stone acted in "bad faith" to delay the administrative process.

judgment on the merits" for purposes of collateral estoppel. (J.A. 168-69.) In so ruling, the court rejected Stone's claim that he did not have a "full and fair opportunity to litigate his claims before the ALJ" and indicated that permitting Stone to pursue relief in federal district court would be "wasteful." (J.A. 169.) The district court did, however, "issue a mandamus to the [Department of Labor] to re-instate proceedings" and further ordered the ARB "to rule on the merits of Stone's appeal within 90 days . . . ." (J.A. 169.)

Although the district court granted the motion to dismiss and ordered further administrative proceedings, it did not dismiss the civil action before it, opting instead to stay the proceedings. Stone thereafter sought certification to file an appeal to this Court, but that motion was ultimately denied. Stone declined to further prosecute his administrative appeal before the ARB because he believed that the filing of his complaint in district court divested the ARB of jurisdiction. Based on Stone's failure to prosecute, the ARB entered a final order of dismissal and Stone thereafter obtained a final judgment from the district court on his dismissed whistleblower claim. Stone now appeals the dismissal of his district court action.

### III.

### A.

The instant appeal presents a question of statutory interpretation, which is a question of law that we review *de novo*. *United States v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004). Appellant argues that the plain meaning of the relevant statute could not be clearer, and that as a Sarbanes-Oxley whistleblower complainant he is entitled to a *de novo* review in federal district court because the Secretary did not reach a "final decision" within 180 days, as required by the Sarbanes-Oxley Act. In contrast, Appellees contend that the language of the Sarbanes-Oxley Act and its regulations do not abrogate the

district court's long-recognized power to apply principles of preclusion to avoid duplicative litigation. Both sides agree that there is no apparent guidance from federal circuit courts on the proper interpretation of the relevant provision of this relatively new statute.[4]

"When interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). Under the first and "cardinal canon" of statutory construction, "courts must presume that a legislature says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Accordingly, when a statute is unambiguous, "this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *United States v. Pressley*, 359 F.3d 347, 349 (4th Cir. 2004). Courts will not, however, adopt a "literal" construction of a statute if such interpretation would thwart the statute's obvious purpose or lead to an "absurd result." *Chesapeake Ranch Water Co. v. Board of Comm'rs of Calvert County*, 401 F.3d 274, 280 (4th Cir. 2005).

Only when a statute is silent or ambiguous regarding the precise question at issue is it appropriate to defer to an administrative agency's interpretative regulations and only then if such interpretation is reasonable. *Midi v. Holder*, 566 F.3d 132, 136-37 (4th Cir. 2009); *Yashenko v. Harrah's NC Casino*

---

[4]The court below noted the lack of case law interpreting the relevant Sarbanes-Oxley Act provision and cited to two district court cases, one of which squarely addressed the question before the district court. (J.A. 166-68.) *See Allen v. Stewart Enters.*, No. 05-4033 (E.D. La. Apr. 6, 2006) (unpublished) (giving preclusive effect to the ALJ's ruling on the plaintiff's administrative whistleblower claim and granting a petition for mandamus that effectively remanded the case to the ARB for further proceedings); *Hanna v. WCI Cmtys., Inc.*, 348 F. Supp. 2d 1322 (S.D. Fla. 2004) (finding that OSHA's *preliminary* findings do not have preclusive effect, but suggesting that the result may be different after an ALJ conducts a hearing and issues a ruling).

*Co.*, 446 F.3d 541, 549 n.1 (4th Cir. 2006). If the plain language of the statute resolves the question and "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

### B.

The Sarbanes-Oxley Act provides employees of publicly traded companies with whistleblower protection, prohibiting employers from terminating, or otherwise retaliating against, such employees when they report "potentially unlawful conduct" that has occurred or is in progress, *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008); *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008). Specifically, section 806 of the Act, titled "Civil action to protect against retaliation in fraud cases," provides:

> No [publicly-traded company], or any officer, employee, . . . or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—
>
> (1) to provide information . . . the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to . . .
>
> . . . a person with supervisory authority over the employee . . . .

18 U.S.C. § 1514A(a); *see also Welch*, 536 F.3d at 275; *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 (4th Cir. 2008). In order to pursue an alleged violation of § 1514A(a), an employee or former employee of a publicly traded company must adhere to the procedure set forth in § 1514A(b), which states than an aggrieved individual may seek relief by:

> (A) filing a complaint with the Secretary of Labor; or
>
> (B) if the Secretary *has not issued a final decision within 180 days of the filing of the complaint* and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity *for de novo review in the appropriate district court of the United States*, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A(b)(1) (emphasis added).

The Department of Labor's ("DOL") regulations implementing § 1514A set forth the procedure governing the administrative review process for such whistleblower claims as well as the procedure for notifying the DOL of a complainant's intent to file suit in federal court for lack of a "final" administrative decision within 180 days. To the extent that such regulations fill in procedural gaps left by the statute and do not conflict with statutory language, we afford them deference. *See Yashenko*, 446 F.3d at 549 n.1 (quoting *Chevron*, 467 U.S. at 844) ("We review legislative regulations (those filling explicit gaps in the statute) to ensure they are not 'arbitrary, capricious, or manifestly contrary to the statute,' while reviewing interpretive regulations (those clarifying terms and provisions of the statute) for reasonableness.").

The first DOL administrative ruling on a Sarbanes-Oxley whistleblower claim takes the form of preliminary OSHA

findings, which can thereafter be challenged before an ALJ. 29 C.F.R. § 1980.106(a). The ALJ's decision on such a challenge "will contain appropriate findings, conclusions, and an order . . . ." *Id.* § 1980.109(a). A complainant can further challenge an adverse ALJ ruling through the filing of a "petition for review" with the ARB. *Id.* § 1980.110(a). If the ARB does not accept the petition for review, then the "decision of the [ALJ] will become the final order of the Secretary . . . ." *Id.* § 1980.110(b). If, however, the ARB accepts a complainant's petition for review, "the decision of the administrative law judge *will be inoperative* unless and until the Board issues an order adopting the decision . . . ." *Id.* (emphasis added).[5]

After the Secretary issues a final decision, the Act provides that such decision can be appealed directly to the appropriate circuit court of appeals. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4). However, if a "final" administrative decision has not been timely issued and a complainant desires *de novo* review in *district* court, the DOL regulations provide that a complainant must file a "notice of his or her intention to file such a [federal] complaint." 29 CFR § 1980.114(b). The notice must be provided fifteen days in advance of filing the federal suit, and should be filed with "the [ALJ] *or the [ARB]*, depending on where the proceeding is pending." *Id.* (emphasis added).

With the above statutory and regulatory backdrop, we now turn to the central question before us — whether the district court had authority to dismiss Stone's complaint by applying preclusion principles.

---

[5]We defer to the DOL's established procedure for processing and ruling on an administrative whistleblower claim, and such procedure necessarily defines what constitutes a "final decision" of the Secretary. Such deference to the DOL's reasonable implementation of the Sarbanes-Oxley Act is appropriate regardless of whether the court views the DOL's procedural scheme as merely "filling explicit gaps in the statute" or "clarifying" the phrase "final decision" as used in the statute. *Yashenko*, 446 F.3d at 549 n.1.

C.

The relevant portion of the Sarbanes-Oxley whistleblower statute states that an aggrieved individual may bring "an action at law or equity for *de novo* review in the appropriate district court of the United States" if a final decision has not been issued by the Secretary of Labor within 180 days after the filing of an administrative complaint. 18 U.S.C. § 1514A(b)(1)(B). Starting, as we must, with the text of the statute, we find the above quoted language to be plain and unambiguous. It is undisputed that, here, the Secretary did not issue a final decision within 180 days and that Stone followed the procedure set forth in the regulations to exercise his statutory right to seek relief in district court.

Although the action in district court was properly filed and the court acknowledged its jurisdiction over the suit, in granting Appellees' motion to dismiss, the district court relied on its inherent power to apply preclusion principles, issue a mandamus, and order the DOL to re-instate administrative proceedings. (J.A. 168-69.) The district court explained that because Stone had "a full and fair opportunity to litigate his claims before an ALJ, which resulted in a final judgment on the merits, it would be wasteful to relitigate the[ ] claims" in district court. (J.A. 169.) In reaching such conclusion, the district court relied in part on the Secretary's public comments on § 1514A, as well as on a similar finding by an out of circuit district court in *Allen v. Stewart Enterprises, Inc.*, No. 05-4033 (E.D. La. Apr. 6, 2006) (unpublished).

In applying preclusion principles, the district court strayed from the plain and unambiguous meaning of § 1514A(b)(1)(B). The district court need not have reached any DOL interpretive regulations, or the Secretary's comments to such regulations, to define a complainant's right to a *de novo* review in district court. The text of the statute is clear — if the DOL has not reached a final decision within the time period established by Congress, a complainant has the

*statutory right* not merely to undefined relief in another forum, but to "*de novo* review" in federal district court. 18 U.S.C. § 1514A(b)(1)(B). A plaintiff's right to pursue such relief is not circumscribed in any manner by the statute.

Appellees argue, however, that although the statute does not preclude a plaintiff from seeking such relief, nothing in the text of the statute, its procedural regulations, or its legislative history, "abrogate[s] the District Court's long-recognized power to prevent needless duplicative litigation by applying collateral estoppel." (Appellees' Brief 17.) Although we agree that district courts generally have the ability to give preclusive effect to final administrative rulings, *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006), we reject Appellees' interpretation of the instant statute since such construction reads out of the statute the phrase "*de novo* review." 18 U.S.C. § 1514A(b)(1)(B). As we have previously stated, "[b]y definition, *de novo* review entails consideration of an issue as if it had not been decided previously."*United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992); *see Betty B Coal Co. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 194 F.3d 491, 499 (4th Cir. 1999) ("The sum of a *de novo* review and a *de novo* process is a new adjudication."). Accordingly, although the statute does not expressly state that a district court's ability to apply preclusion principles is "abrogated," the statute expressly requires the district court to consider the merits anew. Taking steps that, in effect, defer to the agency is in direct conflict with the statute's mandate that the district court consider the issue "as if it had not been decided previously." *George*, 971 F.2d at 1118.[6]

---

[6] We recognize that in reviewing *de novo* questions of law when there is *final* agency action we sometimes defer to the agency's statutory interpretation. *See*, *e.g.*, *Welch*, 536 F.3d at 276 ("Under the Administrative Procedure Act . . . [w]e review questions of law *de novo*, giving deference to the ARB's interpretation of § 1514A."). However, the procedural posture of this matter, involving the initiation of a new case in district court

To further clarify the import of Congress's establishment of a right to "*de novo* review," we have previously discussed in detail the difference between preclusive findings of state ALJs on § 1983 claims, and non-preclusive findings of state ALJs on Title VII claims. *Rao v. County of Fairfax, Va.*, 108 F.3d 42, 45 (4th Cir. 1997); *Layne v. Campbell County Dept. of Social Servs.*, 939 F.2d 217, 219 (4th Cir. 1991). Such distinction exists because the language and legislative history of Title VII establish that administrative findings are entitled to a level of deference that is "something less than preclusion." *Rao*, 108 F.3d at 45; *see University of Tenn. v. Elliott*, 478 U.S. 788, 795-99 (1986) (recognizing Congress's authority to create a statutory scheme that does not afford preclusive effect to prior administrative fact finding).

Here, the controlling statute does not provide that a district court give any *deference* to prior administrative findings but instead requires performance of a *de novo* review.[7] Accord-

due to the absence of final agency action, is starkly different from *Welch*, and similar cases, where an agency's *final* decision is reviewed by this Court in the first instance. Tellingly, here, not only is there no final agency action to which to defer, but a district court's review under § 1514A(b)(1)(B) is not review of a question of law, it is consideration of the Sarbanes-Oxley complaint as if the complaint had been filed initially in district court. As we noted in *Welch*, deference is appropriate when it appears that Congress expects the agency to speak with the force of law, but nothing in § 1514A(b)(1)(B) suggests that Congress intended non-final agency actions, or the Secretary's comments regarding how a district court will conduct *de novo* review, "to speak with the force of law." *Id.* at 276 n.2 (quoting *United States v. Mead Corp.,* 533 U.S. 218, 229 (2001)).

[7] Appellees argue that even though the ALJ's ruling was not the DOL's "final decision," as per the controlling regulations, it was "final" for purposes of collateral estoppel. *See E.I. Du Pont de Nemours & Co. v. Richmond Guano Co.*, 297 F. 580, 583 (4th Cir. 1924) (indicating that a federal district court's ruling can have preclusive effect while an appeal is pending). We need not, however, reach the question of whether an ALJ's ruling, while being appealed administratively, can have preclusive effect in federal court because even if preclusion principles are generally applicable

ingly, deferring to the administrative agency, even if more efficient, is in direct conflict with the unambiguous language of the Sarbanes-Oxley Act. *Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Courts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand[,] . . . [and] the question is not whether administrative estoppel is wise but whether it is intended by the legislature.").

D.

As the plain language of § 1514A(b)(1) mandates a *de novo* review by the district court which will, if an ALJ has already issued a ruling, likely result in some duplication of efforts, we next consider whether such literal interpretation of the statute leads to an "absurd result." *Chesapeake Ranch Water Co.*, 401 F.3d at 280; *see Aremu v. Dep't of Homeland Security*, 450 F.3d 578, 583 (4th Cir. 2006) ("[A] court must, if possible, interpret statutes to avoid absurd results.").

In support of the contention that it would be "absurd" to permit *de novo* review in district court following a full hear-

---

in such scenario, here, Congress's creation of the statutory right to "de novo review" in district court would trump such general rule. *See id.* at 583 (indicating that the lower court's finding only has preclusive effect when, on appeal, "it is *not . . . tried de novo*, but the record made below is simply re-examined and the judgment is either vacated or affirmed . . . ."); *see also* Restatement (Second) of Judgments § 83(4) (1982) ("An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be *incompatible with a legislative policy that*: (a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceedings; or (b) The tribunal in which the issue subsequently arises *be free to make an independent determination of the issue in question*.") (emphasis added); *id.* cmt. a ("The application of this Section is *subject to statutory provisions* that may, expressly or by implication, govern the res judicata effect of the determinations of a particular tribunal.") (emphasis added).

ing before an ALJ, Appellees rely in part on the Secretary of Labor's comments to the regulations implementing § 1514A(b)(1). After explaining that the text of the Sarbanes-Oxley whistleblower provisions is "unique" because it creates the possibility that a complainant will turn to a district court while an appeal is pending before the ARB, the Secretary opines:

> The Secretary believes that it would be a waste of the resources of the parties, the Department, and the courts for complainants to pursue duplicative litigation. The Secretary notes that the courts have recognized that, when a party has had a full and fair opportunity to litigate a claim, an adversary should be protected from the expense and vexation of multiple lawsuits and that the public interest is served by preserving judicial resources by prohibiting subsequent suits involving the same parties making the same claims. . . . Therefore, *the Secretary anticipates* that Federal courts will apply [preclusion] principles if a complainant brings a new action in Federal court following extensive litigation before the Department that has resulted in a decision by an administrative law judge or the Secretary. Where an administrative hearing has been completed and a matter is pending before an administrative law judge or the Board for a decision, a Federal court also might treat a complaint as a petition for mandamus and order the Department to issue a decision under appropriate time frames.

Procedures for the Handling of Discrimination Complaints Under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 69 F.R. 52104, 52111-12 (Aug. 24, 2004) (emphasis added). The Secretary goes on to note that although public comments to the regulations suggested that the DOL "specifically incorporate preclusion principles" into the regu-

lations, such step was not taken because "there is no statutory basis for including preclusion principles in the[ ] regulations . . . ." *Id.*

Notwithstanding the Secretary's "anticipation" on how courts will interpret and apply § 1514A(b)(1), the Secretary's invitation to transform a right to *de novo* review in district court into a request for mandamus cannot be squared with the statutory language chosen by Congress. Although, in the eyes of the Secretary, Congress's decision to permit duplication of efforts is problematic, neither Appellees nor the Secretary present a compelling argument as to why such duplication is "absurd." Congress unquestionably chose an aggressive timetable for resolving whistleblower claims and reasonably created a cause of action in an alternative forum should the DOL fail to comply with such schedule.[8] A natural result of the aggressive timeframe is that efforts will be duplicated when the DOL engages in a thorough, yet administratively non-"final", process that fails to resolve the administrative case within the prescribed timeframe. Neither the Secretary nor the courts have the authority to engage in creative interpretation of the statute to avoid duplication of efforts, even if the goal for doing so is laudable. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (indicating that the Court's "unwillingness to soften the import of Congress' chosen words even if [the Court] believe[s] the words lead to a harsh outcome is long-standing" and results from both deference to the Legislature's supremacy and recognition of the fact that members of Congress typically vote based on a bill's language).

---

[8]The benefit of the aggressive timetable established by Congress does not inure solely to the benefit of complainants, as § 1514A presents complainants an extremely limited window to file a claim, providing that a whistleblower action "shall be commenced not later than 90 days after the date on which the violation occurs." 18 U.S.C. § 1514A(b)(2)(D). The fact that the statute requires both the DOL and the complainant to act swiftly further evidences the weight Congress placed on the timely resolution of whistleblower claims.

Regardless of whether the DOL has, in practice, found it unrealistic to comply with Congress's aggressive timetable,[9] Congress plainly has the authority, in balancing speed against resources, to rationally weigh timeliness as a more compelling concern and provide that proceedings begin anew in district court if the DOL is unable to reach a final decision within 180 days. *See Elliott*, 478 U.S. at 799 n.7 ("Congress of course may decide, as it did in enacting Title VII, that other values outweigh the policy of according finality to . . . administrative factfinding."). If the aggressive statutory timetable is unworkable in practice, the remedy must be provided by Congress, not the courts, as we do not reweigh policy determinations made by the legislature. *See Lamie*, 540 U.S. at 538 (highlighting longstanding policy of deferring to words chosen by Congress); *United States v. Noland*, 517 U.S. 535, 541 n.3 (1996) ("[Defendant] may or may not have a valid policy argument, but it is up to Congress, not this Court, to revise [the statutory framework].").

We therefore find that a literal interpretation of the statute does not lead to an "absurd result." In so finding, we reject as contrary to the statute the Secretary's "suggestion" that district courts apply preclusion principles to effectuate a goal of efficiency. First, as noted above, the plain text of the statute expressly provides a complainant the right to *de novo* review. Second, the DOL's own regulations acknowledge that a district court action may be filed while an appeal is pending before the ARB. *See* 29 CFR § 1980.114(b) (requiring that the ARB be notified of intent to file a federal suit if an ALJ's ruling is on appeal to the ARB). Third, even though preclusion principles are *generally* favored, "[c]ourts do not, of course, have free rein to impose rules of preclusion" if it was not intended by the legislature. *Astoria*, 501 U.S. at 108. Fourth,

---

[9]The ARB noted in a footnote to its November 15, 2007 Order to Show cause that: "As is the usual case, by the time the Board received the petition for review, the 180-day period for deciding the case had already expired." (J.A. 105.)

any contention that Congress's decision, to permit what may amount to duplicative review, is "absurd" is countered by the reality that Sarbanes-Oxley whistleblower cases involve fact patterns where time is of the essence since the fortunes of the investing public may be at stake. Both a complainant that has suffered adverse job consequences and the public therefore have a strong interest in Congress aiding whistleblower plaintiffs, even if in so doing Congress's scheme may be less efficient than the scheme contemplated by the Secretary.[10]

IV.

In summary, the plain language of § 1514A(b)(1)(B) unambiguously establishes a Sarbanes-Oxley whistleblower complainant's right to *de novo* review in federal district court if the DOL has not issued a "final decision" and the statutory 180-day period has expired. Here, regardless of whether the ALJ conducted a hearing or issued findings, it is undisputed that: (1) the administrative process did not yield a "final decision" for purposes of § 1514A(b)(1)(B) at the time Stone exercised his right to file suit in district court; and (2) the 180-day period established by Congress expired prior to Stone filing suit. Therefore, notwithstanding the Secretary's view on the soundness of Congress's decision to create a framework allowing for duplication of efforts, such framework is precisely what Congress reasonably and unambiguously provided for in the controlling statute.

Accordingly, even if the 180-day statutory period is arguably both overly aggressive and not the most efficient use of administrative and judicial resources, Stone was entitled to *de*

---

[10]Appellees, grafting onto an argument advanced by the Secretary, 69 F.R. at 52111, further argue that a literal interpretation of § 1514A(b)(1)(B) would lead to an absurd result, not in this case, but in cases where the ARB issues a *final* decision more than 180 days after the administrative complaint was filed. We decline to reach such fact pattern not currently before us.

*novo* review in the court below. In the absence of any guidance from this court, or any other circuit court, as well as in the face of the Secretary's comments inviting district courts to remand cases to the ARB, the district court understandably erred in applying preclusion principles. As stated above, we reject the Secretary's interpretation and invitation to district courts to apply preclusion principles because Congress expressly provided for *de novo* non-deferential review in district court. A literal interpretation of the statute's plain language does not lead to an absurd result since Congress unquestionably has the right to create a complainant-friendly statutory scheme that affords no deference to non-final agency findings.

For the reasons stated herein, we reverse the district court's order granting Appellees' motion to dismiss, vacate the entry of final judgment, and remand to the district court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*