# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60122

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 12, 2014

Lyle W. Cayce
Clerk

WILLIAM VILLANUEVA,

Petitioner

v.

UNITED STATES DEPARTMENT OF LABOR,

Respondent

Petition for Review of an Order
of the United States Department of Labor

Before JONES, DENNIS, and HIGGINSON, Circuit Judges.

DENNIS, Circuit Judge:

Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act ("SOX"), "creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity." *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475 (5th Cir. 2008); *see* 18 U.S.C. § 1514A(a).  Generally speaking, § 806 bars any publicly traded company from retaliating against an employee who provides information to his or her employer regarding conduct that the employee reasonably believes violates federal mail-, wire-, bank-, or securities-fraud statutes; any rule or regulation of the Securities and Exchange Commission

No. 12-60122

("SEC"); or any other federal law related to fraud against shareholders. *See* 18 U.S.C. § 1514A(a)(1)(C).[1]

The petitioner in this case, William Villanueva ("Villanueva"), is a Colombian national who, until recently, was employed in Colombia by Saybolt de Colombia Limitada ("Saybolt Colombia"), an indirect affiliate of Core Laboratories N.V. ("Core Labs").[2] Core Labs is a Netherlands limited liability company, whose stock is publicly traded in the United States and therefore is an entity covered under § 806. *See id.* Core Labs provides services to petroleum-industry clients in more than fifty countries and has more than seventy offices. Villanueva alleged that starting in January 2008 he raised concerns to several Core Labs and Saybolt Colombia employees that Core Labs was orchestrating a transfer-pricing scheme by requiring Saybolt Colombia to use Core Laboratories Sales, N.V. ("Core Labs Sales"), domiciled in the Dutch Antilles, as the contracting party for inspection services that Saybolt Colombia performed for non-Colombian clients. Villanueva alleged that as part of the scheme, ten

---

[1] Section 806 states, in relevant part:

No [publicly traded company] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee[] . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [18 U.S.C.] section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by[] . . . a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)[] . . . .

*Id.*

[2] Saybolt Colombia is 95 percent owned by Saybolt Latin America B.V., which is wholly owned by Saybolt International B.V., which is wholly owned by Core Labs.

percent of the contract revenues were paid to Core Lab Sales even though it neither procured the contracts nor performed the services. Villanueva further claimed that, at the direction of Core Labs officials in Houston, Saybolt Colombia's accounting department wrongfully claimed value-added tax ("VAT") exemptions on work transferred to Core Lab Sales and that, as a result, Saybolt Colombia was able to underreport its taxable revenue to Colombian authorities. Subsequently, Villanueva was passed over for a pay raise at Saybolt Colombia and eventually terminated.

Villanueva filed a complaint with the Occupational Safety and Health Administration ("OSHA"), asserting that Saybolt Colombia and Core Labs had violated § 806 by retaliating against him for blowing the whistle on the alleged scheme to violate Colombian tax law. OSHA, an Administrative Law Judge ("ALJ"), and the Administrative Review Board ("Board") all rejected Villanueva's complaint. Villanueva now appeals to this court, *see* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A), and the parties ask us to determine whether § 806 applies extraterritorially.

As previously noted, § 806 bars companies that are publicly traded in the United States from retaliating against a whistleblowing employee, but *only if* the employee seeking the statute's protection demonstrates that he provided information regarding conduct that he or she reasonably believed violated one of the six enumerated provisions of U.S. law. *See* 18 U.S.C. § 1514A(a)(1)(C); *Allen*, 514 F.3d at 476. On review of the facts of the case—in particular, the allegations Villanueva made to Saybolt Colombia, to Core Labs, and in his complaint to OSHA—we conclude that Villanueva did not provide information regarding conduct that he reasonably believed violated one of the six provisions of *U.S.* law enumerated in § 806; rather, he provided information regarding conduct that he reasonably believed violated *Colombian* law. In other words, he failed to show that he engaged in protected activity under § 806. *See Allen*, 514

No. 12-60122

F.3d at 475-77. Because Villanueva's claim does not fall within the scope of §
806's protection, we AFFIRM.[1]

## BACKGROUND

### A.     Statutory and Regulatory Framework

A person alleging retaliation under § 806 may seek relief by filing a
complaint with the Secretary of Labor.   18 U.S.C. § 1514A(b)(1)(A).   The
Secretary has delegated responsibility for receiving and investigating SOX
whistleblower complaints to OSHA.  *See* 77 Fed. Reg. 3912; *see also* 29 C.F.R. §
1980.104(a).  Following an investigation, OSHA must, within 60 days, issue a
determination either dismissing the complaint or finding reasonable cause to
believe that retaliation has occurred and ordering appropriate relief.  *See* 18
U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1980.105.  Either
the complainant or the respondent may file objections to OSHA's determination
with an ALJ.  *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(A); 29
C.F.R. § 1980.106.  The ALJ's decision is subject to discretionary review by the
Board, which issues the final order of the Secretary.  *See* 29 C.F.R. § 1980.110.
"Any person adversely affected or aggrieved by" a final order of the Secretary
"may obtain review of the order in the United States Court of Appeals for the
circuit in which the violation[] . . . allegedly occurred or the circuit in which the
complainant resided on the date of such violation."  49 U.S.C. § 42121(b)(4)(A);
*see* 18 U.S.C. § 1514A(b)(2)(A).

### B.     Facts and Procedural Posture

Villanueva lived in Bogota, Colombia and worked for Saybolt Colombia for
more than twenty-four years.  For the last sixteen of those twenty-four years,
Villanueva served as the company's general manager.  Villanueva is not a U.S.
citizen and he has never worked in the United States for Saybolt Colombia.

---

[1] Because we affirm on this narrower ground, we need not reach the argument,
advanced by the government and Core Labs, that § 806 does not apply extraterritorially.

No. 12-60122

Saybolt Colombia is a Colombian limited liability company that is headquartered in Bogota and is an indirect affiliate of Core Labs. Core Labs is a Netherlands limited liability company with headquarters in Amsterdam and a U.S. office in Houston, Texas. Core Labs's securities are registered under § 12 of the Securities and Exchange Act of 1934 ("Exchange Act") and are publicly traded on the New York Stock Exchange. Saybolt Colombia does not register securities under § 12 or file reports under § 15(d) of the Exchange Act. Consequently, Core Labs is a publicly traded company under SOX, but Saybolt Colombia is not. *See* 18 U.S.C. § 1514A. Additionally, Villanueva submitted evidence that, he claims, shows that Core Labs directly controlled all aspects of Saybolt Colombia's business, finances, and operations.

Starting in January 2008, Villanueva raised concerns to employees at both Core Labs and Saybolt Colombia regarding what he believed to be Saybolt Colombia's fraudulent underreporting of taxable revenue to the Colombian government. Villanueva informed these individuals that Core Labs had required Saybolt Colombia to use Core Labs Sales as the contracting party for inspection services that Saybolt Colombia performed for non-Colombian clients and that this policy required that ten percent of any contract revenue be paid to Core Labs Sales even though it did not procure the contracts or perform the services. Villanueva further alleged that, at the direction of Core Labs officials in Houston, Saybolt Colombia had wrongfully claimed VAT exemptions on work transferred to Core Labs Sales pursuant to this claimed policy.

Among the people to whom Villanueva raised his concerns were Fernando Padilla ("Padilla"), Saybolt Colombia's Controller, and Osiris Goenaga ("Goenaga"), Core Labs's accounting assistant for Colombia. Additionally, Villanueva copied C. Brig Miller, Core Labs's Chief Accounting Officer based in Houston, on his emails to Padilla and Goenaga. Villanueva requested that

5

No. 12-60122

Padilla correct the tax exemptions before closing the books for Saybolt Colombia on March 31, 2008.

Villanueva alleged that between January and April 2008, Core Labs directed two Colombian law firms to provide Villanueva with opinion letters. Both firms concluded that there was no impropriety in the transactions between Saybolt Colombia and Core Labs Sales or with respect to the claimed VAT exemptions. Villanueva, who has a Colombian law degree, was dissatisfied with the firms' legal conclusions. Relying on his own analysis under Colombian tax law, Villanueva refused to sign Saybolt Colombia's tax returns, which were due to the Colombian tax authorities by April 17, 2008.

On April 3, 2008, Villanueva was passed over for a pay raise while other Saybolt Colombia employees received raises. Villanueva alleged that the decision to deny him a pay raise was made by Ivan Piedrahita ("Piedrahita"), the Regional Manager for Saybolt Latin America B.V., and Jan Heinsbroek ("Heinsbroeck"), the President of Saybolt Latin America B.V. and a director of Saybolt International B.V. On April 29, 2008—after Villanueva had refused to certify and file Saybolt Colombia's tax returns—Villanueva's employment was terminated. On that same day, a letter, signed by Heinsbroeck and personally delivered to Villanueva in Bogota by Piedrahita, informed Villanueva of his discharge.

On July 28, 2008, Villanueva filed a complaint with OSHA alleging that Saybolt Colombia and Core Labs violated § 806 by retaliating against him for blowing the whistle on the alleged scheme to violate Colombian tax law. Specifically, Villanueva alleged that he "was abruptly fired . . . as a result of his complaints about, and investigation of, income-tax and value-added-tax fraud that was being perpetrated by Saybolt Colombia in Colombia at the direction of Core Lab[s]'s accounting and legal executives in Houston, Texas." OSHA dismissed the complaint; because the adverse employment actions—the denial

6

of the pay raise and Villanueva's subsequent termination—took place outside the United States, the agency reasoned that it lacked jurisdiction over the complaint.[2]

Villanueva sought review before an ALJ, who, agreeing with OSHA, dismissed the complaint. The ALJ reasoned that applying § 806 to the facts of the case would entail extraterritorial application of SOX's whistleblower protection and that such application was impermissible because § 806 does not apply extraterritorially. The ALJ concluded that because Villanueva, a foreign national working for a foreign subsidiary of a covered entity, complained of fraud and termination, both of which occurred in Colombia, he lacked jurisdiction under SOX.

Villanueva appealed the ALJ's decision to the Board, which concluded that it had jurisdiction but "affirm[ed] the dismissal of th[e] case on narrow grounds, focusing solely on the extraterritorial nature of Villanueva's disclosures about alleged violations of foreign law without a sufficient connection to violations of domestic law." *Villanueva v. Core Labs. N.V.*, ARB Case No. 09-108, 2011 WL 7021145, at *1 (ARB Dec. 22, 2011). The Board stated its belief that it must address two questions: (1) "analyzing [§] 806's extraterritorial reach" and (2) "determining . . . SOX's primary focus." *Id.* at *8. Proceeding to the second question first, the Board concluded that whereas § 806 limits its protection to reported violations of one of six enumerated provisions of *U.S.* law, "the alleged fraud and/or law violations involved *Colombian* laws with no stated violation or impact on U.S. securities or financial disclosure laws." *Id.* (emphasis added). It was on this basis that the Board held that § 806 does not apply

---

[2] The Supreme Court has since clarified that whether a statute applies extraterritorially is a question on the merits rather than a question of a tribunal's power to hear the case. *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010). Because we affirm on the ground that Villanueva failed to show that he engaged in protected activity under § 806, however, we do not discuss extraterritoriality further. *See supra* note 1.

No. 12-60122

extraterritorially. *Id.* at *9. Next, in response to Villanueva's argument that, even if § 806 did not apply extraterritorially, the facts of his case would trigger only *domestic* application of the statute, the Board reiterated its conclusion that "Villanueva's reporting of foreign tax law [violations] [was] beyond the reach of [§] 806." *Id.* at *10. Pursuant to 18 U.S.C. § 1514A(b)(2)(A) and 49 U.S.C. § 42121(b)(4)(A), Villanueva appealed to this court.

## DISCUSSION

### A.

Judicial review of the Board's order is governed by the standards set out in the Administrative Procedure Act, 5 U.S.C. § 706(2). *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(4)(A); *Allen*, 514 F.3d at 476. "Under that standard, the decision of the [Board] will be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.'" *Allen*, 514 F.3d at 476 (quoting *Williams v. Admin. Review Bd.*, 376 F.3d 471, 475 (5th Cir. 2004)). We review the Board's factual findings for substantial evidence. *Id.* "Under the substantial evidence standard, the [Board]'s decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion as the [Board]." *Williams*, 376 F.3d at 476. We review the Board's conclusions of law *de novo*. *Allen*, 514 F.3d at 476.

### B.

Because we proceed to address the question of whether § 806 applies to the conduct about which Villanueva had a reasonable belief and complained—and because the answer to that question is dispositive—it is unnecessary for us to consider whether § 806 applies extraterritorially. Section 806 prohibits publicly traded companies from doing any of the following to an employee who engages in protected whistleblower activity: "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment." 18 U.S.C. § 1514A(a). In this case, the question

8

boils down to whether Villanueva has demonstrated that he in fact engaged in protected whistleblower activity. Section 806 prohibits retaliation *only if* the employee provides information regarding conduct that he or she reasonably believes violates one of six enumerated categories of U.S. law. *See* 18 U.S.C. § 1514A(a)(1) (listing federal mail-, wire-, bank-, and securities-fraud statutes, all rules and regulations of the SEC, and any other federal law related to fraud against shareholders). As the Board held, in neither his complaint to OSHA nor in his communications to Core Labs and Saybolt Colombia employees did Villanueva indicate that he was providing information that he reasonably believed violated any of these six categories. He therefore failed to show that he engaged in any protected whistleblowing activity, making it unnecessary for us to decide whether § 806 can have extraterritorial application.

### a. Villanueva's OSHA complaint

Villanueva notes that, in his attorney's letter to OSHA complaining of his termination, he stated that the retaliation "was undertaken because of his complaints about, and investigation of, what he reasonably believed to be income tax and VAT fraud being perpetrated in Colombia at the express direction of Core Lab[s]'s executives in Houston *using mail, email and telephones to accomplish the fraud.*" Villanueva's single reference in his nine-page OSHA complaint to the use of mail, email, and telephones by Core Labs officials in the company's Houston office, however, is insufficient to demonstrate that he had had a reasonable belief that there was a violation of the U.S. mail- and wire-fraud statutes. Rather, as the Board concluded, the focus of Villanueva's complaint to OSHA was that Core Labs retaliated against him because he complained of Saybolt Colombia's violation of *Colombian* tax laws. *See Villanueva*, 2011 WL 7021145, at *8 n.21 (noting that Villanueva, in a supplemental filing before the Board, "reasserted that he complained about violations of foreign laws and did not expressly implicate violations of domestic

9

securities or financial disclosure laws" and stating that "Villanueva had ample opportunity to indicate that his concerns implicated domestic laws or concerns and, perhaps to his credit, he did not alter or amend his allegations"). For instance, Villanueva alleged in his OSHA complaint that he "was abruptly fired . . . as a result of his complaints about, and investigation of, *income tax and value added tax fraud* that was being perpetrated by Saybolt Colombia in Colombia at the direction of Core Lab[s]'s accounting and legal executives in Houston, Texas." The Board's finding is therefore supported by substantial evidence given that "a reasonable person could have reached the same conclusion as the [Board]." *Williams*, 376 F.3d at 476. Accordingly, Villanueva did not demonstrate that he engaged in protected conduct because he did not complain, based on a reasonable belief, that one of six enumerated categories of U.S. law had been violated. *See* 18 U.S.C. § 1514A.

> *b. Villanueva's complaints to Core Labs and Saybolt Colombia*

Indeed, Villanueva's underlying evidence of record does not evince that he complained to Core Labs or Saybolt Colombia executives that they were violating *U.S.* law by using domestic mail or wires to orchestrate Colombian tax-law violations. Section 806 prohibits a covered entity from retaliating against an employee who "*reports information* to a supervisor" regarding his or her reasonable belief of a violation of, for instance, the U.S. mail- or wire-fraud statute. *Allen*, 514 F.3d at 477. "To prevail, an employee must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Id.* at 475-76 (footnotes omitted). We agree with the Board that § 806's "critical focus is on whether the employee *reported conduct* that he or she *reasonably believes* constituted a violation of federal law." *Sylvester v. Parexel Int'l LLC*, ARB No. 07-123, 2011 WL 2165854, at *15 (ARB

May 25, 2011) (first emphasis added). Admittedly, "[a]n employee need not cite a code section he believes was violated in his communications to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal." *Welch v. Chao*, 536 F.3d 269, 276 (4th Cir. 2008) (internal quotation marks omitted). In this case, the "specific conduct" that Villanueva asserted was illegal was Saybolt Colombia's underreporting of taxes due to the Colombian government. In his reply brief, Villanueva claims that he repeatedly objected to the *conduct* of Core Labs officials in Houston, sufficient to satisfy *Welch*'s point about notice to the employer, but the conduct to which he objected was the supposed orchestration of violations of Colombia tax law, not the violation of U.S. mail or wire laws to effectuate those purported Colombian law violations. Consequently, Villanueva has not demonstrated that he engaged in any protected activity, and, given this, we cannot say, as required by *Allen*, that Core Labs knew that Villanueva engaged in a protected activity that was a contributing factor in the unfavorable actions of withholding his pay raise and ultimately terminating him. *See* 18 U.S.C. § 1514A; *Allen*, 514 F.3d at 475-76.

## CONCLUSION

Because we conclude that Villanueva has not demonstrated that his claim falls within the scope of § 806, we AFFIRM the Board's dismissal of Villanueva's complaint.