# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20668
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2019

Lyle W. Cayce
Clerk

UJWALA BHANDARI,

      Plaintiff - Appellant

v.

MAVERICK TUBE; HYDRIL COMPANY; TENARIS GLOBAL,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2265

Before DAVIS, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

      Maverick Tube ("Maverick") fired one of its tax directors, Ujwala Bhandari, after Bhandari expressed concerns about the tax valuation of one of Maverick's subsidiaries' licensing deals. She then sued for whistleblower retaliation under 18 U.S.C. § 1514A. The district court granted summary judgment; we AFFIRM on alternate grounds.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20668

## I.     Background

Bhandari's central allegation is that she was fired because she expressed concerns about Maverick's tax reporting of the value of a license for pipeline parts.  Here, we review all evidence de novo and in a light most favorable to Bhandari.  *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam).

The license at issue was between a subsidiary of Maverick, Hydril Co., and one of Maverick's sister companies, Tenaris Connections Limited ("TCL"). Because the license was between two related corporate entities, tax law required Maverick to show that the license was granted at a price comparable to what it would give in an arm's-length negotiation.  *See* 26 C.F.R. § 1.482-1. To make that showing, Maverick had an outside adviser, Duff & Phelps, value the license. The valuation was based in part on the royalty rate that Maverick charged to certain other customers for the license's technology.  Using that valuation, Maverick determined the value of the license was $22.5 million upfront for a 10-year license.  That value was reported in Maverick's 2012 taxes and again when the IRS audited Maverick over those taxes.

Bhandari learned in 2015 that Hydril changed the royalty rate it charged other customers for the licensed technology, though it is unclear when that change occurred.  Bhandari believed that the royalty rate change meant that Duff & Phelps' valuation of the license was far lower than it should have been. She flagged the issue for two of her supervisors, Fabian Lev and Chris North.

During the IRS's ongoing audit, it requested a meeting about Maverick's report of the license's value.  By that time, Maverick had internally reviewed its valuation and determined that it understated the benefits of the license by about $85 million.  But, lucky for Maverick, it also believed that the increase was offset by a reversion rights offset valued at $83 million, which meant the

2

No. 18-20668

value of the license had not materially changed. Bhandari did not believe the $83 million offset was correct and again expressed concerns to her supervisors.

When Bhandari met with her supervisor, North, to prepare for their meeting with IRS, he made clear that he would not disclose the new information to the IRS. North encouraged her to meet with them and strictly limit her answers to what she knew at the time the 2012 taxes were filed— before she discovered that the license was undervalued. She refused. Bhandari was fired the next day. Unsurprisingly, Maverick has a different version of the story but, for summary judgment purposes, we have stated the facts in the light most favorable to Bhandari.

Bhandari sued in federal court under 18 U.S.C. § 1514A. The district court granted summary judgment, and Bhandari timely appealed.

## II.    Discussion

We affirm, though on an alternative ground than the grounds discussed in the district court's order.[1] To succeed on a § 1514A claim, employees must show that they provided information about "conduct which the employee[s] reasonably believe[d] constitute[d] a violation of" one of six enumerated categories of crimes. 18 U.S.C. § 1514A(a)(1). In *Villanueva v. United States Department of Labor*, we rejected a § 1514A claim when a fired employee "did not complain, based on a reasonable belief, that one of six enumerated categories of U.S. law had been violated." 743 F.3d 103, 109 (5th Cir. 2014). We did so even though the conduct complained of could have been easily recast

---

[1] Bhandari challenges the district court's application of summary judgment standards. We need not address those arguments because we may apply those standards ourselves and affirm on any grounds supported by the record and presented by the parties below. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) ("[W]e may only affirm an order granting summary judgment on a basis that was presented to the district court.").

as one of the enumerated crimes. *Id.* at 109. It is not enough for whistleblowers to assist in the investigation of one of the enumerated crimes; they must also subjectively and objectively believe, at the time of their assistance, that the relevant conduct violated one of the specific crimes in § 1514A(a)(1). *See Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008) (noting that "an employee's reasonable belief must be scrutinized under both a subjective and objective standard").

Here, Bhandari has identified evidence that only shows she warned about a potential tax consequence from the undervalued license. She has not identified any record evidence tending to prove that she believed or warned that the complained of conduct amounted to one of the enumerated crimes in § 1514A. She argued to the district court that the complained of conduct might satisfy the elements of those crimes. But that argument is insufficient under *Villanueva.* Whistleblowers must provide evidence that they contemporaneously believed the conduct violated one of the enumerated crimes. Because Bhandari has not done so, we AFFIRM.