**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 17-1811**

---

NORTHROP GRUMMAN SYSTEMS CORP.,

        Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, ADMINISTRATIVE REVIEW BOARD,

        Respondent,

v.

CRISELL SEGUIN,

        Intervenor.

---

On Petition for Review of the Orders of the United States Department of Labor, Administrative Review Board. (15-038; 15-040; 16-014)

---

**No. 17-2204**

---

NORTHROP GRUMMAN SYSTEMS CORP.,

        Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, ADMINISTRATIVE REVIEW BOARD,

Respondent,

v.

CRISELL SEGUIN,

Intervenor.

_____

On Petition for Review of the Orders of the United States Department of Labor, Administrative Review Board. (15-038; 16-014)

_____

Argued: March 21, 2019                                    Decided: June 13, 2019

_____

Before AGEE, KEENAN, and QUATTLEBAUM, Circuit Judges.

_____

Granted, vacated and remanded with instructions by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Keenan joined.

_____

**ARGUED:** David William Ogden, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Petitioner. Sarah Kay Marcus, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. **ON BRIEF:** Lincoln O. Bisbee, P. David Larson, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C.; Kelly P. Dunbar, Emily F. Gomez, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Petitioner. Kate S. O'Scannlain, Solictor of Labor, Jennifer S. Brand, Associate Solicitor, William C. Lesser, Deputy Associate Solicitor, Megan E. Guenther, Counsel for Whistleblower Programs, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

_____

QUATTLEBAUM, Circuit Judge:

In 2002, Congress passed the Sarbanes-Oxley Act ("SOX").[1] SOX provides several provisions protecting shareholders in public companies, including whistleblower protection. The whistleblower protection provision prohibits employers in public companies from firing an employee for providing information to a person with supervisory authority over the employee relating to mail fraud, wire fraud, bank fraud, securities fraud, a violation of any SEC rule or regulation or fraud against shareholders.[2] 18 U.S.C. § 1514A(a)(1).

This case involves the scope of SOX's whistleblower protection provision. Intervenor Crisell Seguin alleges that she was terminated by Northrop Grumman Systems Corporation ("Northrop") in violation of 18 U.S.C. § 1514A. Because we conclude that Seguin does not qualify for whistleblower protection under 18 U.S.C. § 1514A, we

---

[1] SOX was passed, at least in part, in response to several instances of high profile corporate fraud, including the Enron scandal. *See Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014). In addition to instances of corporate fraud, the economic challenges facing the United States at the turn of the 20th century were numerous. The emergence and maturation of the internet led to an explosion of growth of companies engaged in internet-related businesses in the 1990s that became known as the dot com bubble. The excessive valuation of many of these companies reversed course in the early 2000s bursting the bubble. Then, after the September 11 attacks on our country, the stock market was shut down for four days and the markets further declined. Thus, after the prosperity and growth of the 1990s, the United States entered into a recession in the early 2000s.

[2] An employee may also provide information to a Federal regulatory or law enforcement agency or any Member of Congress or any committee of Congress. 18 U.S.C. § 1514A(a)(1).

vacate the administrative orders and remand the case with instructions for the dismissal of Seguin's complaint and entry of judgment for Northrop.

## I.

## A.

SOX requires an employee asserting a whistleblower claim to establish: (1) the employee engaged in a protected activity; (2) the employer knew or suspected that the employee engaged in a protected activity; (3) the employee suffered an adverse action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action. 29 C.F.R. § 1980.104(e)(2). To show that she engaged in protected activity, an employee must show that she had a subjective belief and an objectively reasonable belief that the conduct she complained of violated one of the six enumerated categories of § 1514A(a)(1). *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008).[3] Those categories are mail fraud, wire fraud, bank fraud, securities fraud, any SEC rule or regulation or any federal law relating to fraud against shareholders.

---

[3] In *Welch*, this Court held that "an employee must show that his communications to his employer 'definitively and specifically relate[d]' to one of the laws listed in § 1514A." 536 F.3d at 275 (quoting *Platone v. FLYi, Inc.*, No. 04-154, 2006 WL 3193772, at *9 (U.S. Dept. of Labor Sept. 29, 2006)). Since *Welch*, the DOL concluded that the definitive and specific standard was applied too strictly and held that the proper standard is "whether the employee reported conduct that he or she *reasonably believes* constituted a violation of federal law." *Sylvester v. Parexel Int'l LLC,* No. 07–123, 2011 WL 2165854, at *15 (U.S. Dept. of Labor May 25, 2011) (emphasis in original). Because we conclude that Seguin fails to satisfy either standard, we need not resolve whether *Welch*'s imposition of the stricter definitive and specific evidentiary standard remains good law in light of *Sylvester*.

Significantly, all six categories relate to fraud. *See*, *e.g.*‚ *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 n.1 (4th Cir. 2008).

The requirement that the information provided relate to one of the six specified categories is crucial. The whistleblower protection provision does not extend protection to every employee complaint about possible improper or even illegal conduct. The provision prohibits retaliation only if the employee provides information regarding conduct that he or she reasonably believes violates one of six categories listed by Congress in § 1514A(a)(1). *Villanueva v. United States Dept. of Labor*, 743 F.3d 103, 109 (5th Cir. 2014).

B.

With these legal principles in hand, we turn to the facts and procedural history of this case. Although Seguin's alleged protected activity occurred in 2011, the origins of Seguin's complaints against Northrop can be traced back to 2007 when Seguin filed suit against Northrop in Virginia state court. In this defamation suit, Seguin alleged that her supervisor at Northrop knowingly and recklessly made false statements about her in a performance review. In response to Seguin's lawsuit, Northrop filed a motion to compel arbitration pursuant to its arbitration policy. The Virginia state court granted Northrop's motion.

Seguin appealed the state court's order to the Supreme Court of Virginia, arguing that Northrop's arbitration policy was not binding on her because she never accepted the arbitration policy. The Supreme Court of Virginia dismissed Seguin's appeal for lack of

5

jurisdiction and denied her petition for rehearing. Seguin's subsequent petition for a writ of certiorari to the United States Supreme Court was denied in 2010.

Throughout this period, Seguin maintained that she was not bound by Northrop's arbitration policy, contained in Northrop Corporate Procedure H103A, which sets out the requirements of Northrop's employee mediation/binding arbitration program. The arbitration policy covered employees' claims which arose, related to or were associated with their employment. The policy expressly did not apply to certain claims, including claims "as to which an agreement to arbitrate . . . is prohibited by law . . . ." J.A. 1535.

Seguin also raised objections to Northrop corporate policies and procedures allegedly linked to the arbitration policy. Specifically, she objected to portions of an annual ethics training and, in fact, refused to sign Northrop's C-196 Conflict of Interest form ("Conflict of Interest form"). The Conflict of Interest form requires the disclosure of "any known relationships or activities that may cause a real or perceived business conflict of interest." J.A. 1281. Seguin asserted that these policies and procedures surreptitiously attempted to bind employees to Northrop's arbitration policy.

In January and February 2011, Seguin sent four emails to Northrop executives communicating her concerns about these policies and procedures.[4] In an email from January 14, 2011, Seguin raised concerns about both a time and labor charging module

---

[4] For purposes of the proceeding before the Administrative Law Judge ("ALJ"), the parties stipulated that only four email communications from January and February 2011 would be evaluated as alleged protected activities under SOX. Although Seguin subsequently requested that the stipulation be rejected, the ALJ declined to do so.

6

("Charging Module") and the Conflict of Interest form. The Charging Module was a training module that was part of Northrop's 2010 ethics training. Seguin alleged that the Charging Module forged corporate records and tricked employees into agreeing to Northrop's arbitration policy. She also asserted that the Conflict of Interest form bound employees to Northrop's arbitration policy.

In a February 14, 2011 email, Seguin reiterated her opposition to Northrop's arbitration policy and argued that she was exempted from the policy by senior Northrop executives. In the same email, she suggested that this alleged exemption rendered Northrop's SEC filings inaccurate.

On February 28, 2011, Seguin was suspended for refusing to complete the Conflict of Interest form. She was reinstated to her position once she completed the form.

Northrop decided to institute a reduction in force in January 2011 after monthly forecasts showed lower demand for the work of Seguin's department. On May 3, 2011, Northrop notified Seguin that her employment would be terminated effective May 17, 2011, due to a reduction in force for her department.

Seguin filed a complaint with the Occupational Safety and Health Administration ("OSHA") on May 16, 2011, in which she alleged that her termination violated SOX. OSHA dismissed the complaint. Seguin appealed the dismissal of her complaint to a Department of Labor ("DOL") Administrative Law Judge ("ALJ"). A hearing and briefing followed.

In 2015, the ALJ issued a decision and order finding that Northrop terminated Seguin in violation of the SOX whistleblower provision. The ALJ ordered Northrop to

7

reinstate Seguin and awarded her back pay, front pay and damages. Although the decision is not a model of clarity, the ALJ noted that "[t]he primary issue in this case is whether [Seguin's] refusal to sign a company C-196 Form . . . and facts surrounding her refusal constitute protected activity in this claim and if so, whether they were a contributing factor in the adverse personnel action." J.A. 49. In determining Seguin engaged in protected activity, the ALJ found that the January 14, 2011 email alone constituted protected activity under 18 U.S.C. § 1514A(a)(1). The ALJ noted that the email raised multiple concerns about unlawful conduct, including concerns about the Charging Module and the Conflict of Interest form. Regarding the Charging Module, the ALJ found that Seguin held an objectively reasonable belief that Northrop was committing fraud through the manipulation of time records in that module.

The ALJ's determination regarding the lawfulness of the Conflict of Interest form rested on several critical findings. First, the ALJ determined that the form incorporated Northrop's arbitration policy by reference. Second, the ALJ found that 18 U.S.C. § 1514A(e), which prohibits the arbitration of SOX claims, was effective at the time of the January 14, 2011 email. Third, the ALJ concluded that several of Seguin's SOX whistleblower claims, including SOX claims intertwined in her state lawsuit, were pending at the time of the January 14, 2011 email. Consequently, the ALJ reasoned that Seguin's refusal to sign the Conflict of Interest form raised concerns about Northrop's unlawful attempts to arbitrate her SOX whistleblower claims.

8

Based on these determinations, the ALJ entered an award of attorney's fees and costs requiring Northrop to pay Seguin $507,821.12 for litigation costs, expert witness fees and reasonable attorney's fees.

In May 2017, the DOL Administrative Review Board ("ARB") affirmed the ALJ's decision. The ARB found that "the ALJ's factual findings in support of his conclusion [that Seguin engaged in SOX-protected activity] are supported by substantial evidence of record." J.A. 20. Summarizing these findings, the ARB noted that the ALJ determined that Seguin engaged in protected activity, including her complaints about the Conflict of Interest form. In explaining how Seguin's complaints about the form constituted protected activity, the ARB noted that Seguin "concluded that Northrup [sic] Grumman, by requiring employees to sign this Form, effectively secured an employee's agreement to the company's mandatory arbitration policy, which Seguin contended violated the SOX prohibition against pre-dispute arbitration agreements." J.A. 19. The ARB also affirmed the ALJ's award of attorney's fees and costs for services performed before the ALJ.

On July 11, 2017, Northrop filed a timely petition for review of ARB orders. This Court has jurisdiction to decide the petitions for review under 49 U.S.C. § 42121(b)(4)(A), 18 U.S.C. § 1514A(b)(2), and 29 C.F.R. § 1980.112(a).[5]

---

[5] On October 4, 2017, the ARB granted Seguin $136,777.50 in attorney's fees and costs associated with her appeal before the Board. Northrop filed a timely petition for review of that order, and this Court consolidated all of Northrop's petitions into this appeal.

II.

A.

Before examining the merits of Northrop's appeal, we first discuss the applicable standard of review. The ARB's determinations are "the agency's final decision and [are] reviewable in federal court under the standards stated in the Administrative Procedure Act, 5 U.S.C. § 706." *Lawson,* 571 U.S. at 437. Under the Administrative Procedure Act, an appellate court "may only disturb the ARB's decision if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Welch*, 536 F.3d at 275–76 (quoting 5 U.S.C. § 706(2)(A)). Questions of law are reviewed de novo with deference usually given to the agency's interpretation of § 1514A. *Id.* at 276. The agency's findings of fact are upheld if supported by substantial evidence. *Id.*

This standard is deferential to the ARB, as it should be. However, it does not make this Court's review a rubber stamp. *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). On the contrary, this Court is required to conduct a meaningful review of agency action. *Id.* As a part of this review, this Court must conduct an "objective assessment of the sufficiency of the evidence." *Dorsey Trailers, Inc. v. NLRB.*, 233 F.3d 831, 840 (4th Cir. 2000).

B.

Applying this standard, we address Northrop's argument that the ARB erred in holding that Seguin engaged in protected activity. Although the ARB affirmed the ALJ's determination that Seguin engaged in protected activity by complaining about Northrop's arbitration policy, Charging Module and SEC filings, the DOL advances only one theory

of protected activity on appeal.[6] According to the DOL, Seguin objected to Northrop's arbitration policy because she believed Northrop's arbitration policy violated § 1514A(e) of the SOX whistleblower provision, which prohibits pre-suit arbitration of SOX claims. The DOL argues that as a result of this belief, Seguin refused to sign the Conflict of Interest form because she believed that doing so was tantamount to consenting to the arbitration policy.

As noted above, and as the DOL acknowledges, an employee engages in protected activity only when she provides information regarding conduct that she reasonably believes violates one of six categories listed by Congress in § 1514A(a)(1)—mail fraud, wire fraud, bank fraud, securities fraud, any SEC rule or regulation or any federal law relating to fraud against shareholders. *Villanueva*, 743 F.3d at 109. Here, the DOL contends that § 1514A(e) is a provision of "Federal law relating to fraud against shareholders"—the sixth enumerated category of § 1514A(a)(1). Consequently, the DOL argues that Seguin's complaints that Northrop's conduct violated § 1514A(e) constitutes protected activity under SOX because the complained of conduct falls under the sixth

---

[6] The DOL has apparently abandoned the arguments that Seguin engaged in protected activity by complaining about the Charging Module and the SEC filings. As an intervening party, Seguin has maintained her argument that her complaints about the SEC filings are protected activity. Whether abandoned or not, we find that that Seguin's complaints about the Charging Module and SEC filings are not protected activity under § 1514A(a)(1). Substantial evidence does not support the conclusion that it was objectively reasonable for Seguin to believe that the challenged conduct—Northrop's SEC filings or Charging Module—violated any of the six enumerated categories of § 1514A(a)(1).

enumerated category of § 1514A(a)(1).[7] The DOL further contends that Seguin's belief that Northrop's arbitration policy violated § 1514A(e) was reasonable. We address these arguments in turn.

1.

We first evaluate the DOL's argument that violations of the SOX whistleblower provision itself, specifically violations of § 1514A(e), constitute shareholder fraud under § 1514A(a)(1).[8] In considering this interpretation, we begin, where we must, with the text of § 1514A(a)(1). That provision provides "[n]o company . . . may discharge . . . an employee . . . because of any lawful act done . . . to provide information . . . which the employee reasonably believes constitutes a violation of . . . any provision of Federal law relating to fraud against shareholders. . . ." 18 U.S.C. § 1514A(a)(1). By the plain language of the statute, the sixth category of § 1514A(a)(1) applies only to information provided that concerns shareholder fraud. It is not a broad, catchall provision.

---

[7] Northrop contends that the ARB and ALJ orders could be vacated because the DOL's theory on appeal was not "invoked when [the agency] took action." *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2710 (2015). Although the ALJ decision is not entirely clear on the issue, we find that the ARB and ALJ orders viewed § 1514A(e) as a component of the theory of protected activity. *See Deltek, Inc. v. Dept. of Labor, Administrative Review Bd.*, 649 F. App'x 320, 330 n.5 (noting that agency decisions need not provide ideal clarity but only a rational bridge between the record findings and legal conclusions).

[8] Because neither the ARB nor the ALJ explicitly articulated the DOL's interpretation of § 1514A below, we need not afford *Chevron* deference to the DOL's post hoc interpretation. *Miller v. Clinton*, 687 F.3d 1332, 1342 (D.C. Cir. 2012). This interpretation may be entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) but only such deference as its power to persuade commands. *Pub. Citizen, Inc. v. United States. Dept. of Health and Human Servs.*, 332 F.3d 654, 661–62 (D.C. Cir. 2003).

Shareholder fraud involves false representations of material fact intended to deceive shareholders and reliance by shareholders on those false representations to their detriment. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). The basic elements of the claim include: a material misrepresentation (or omission), scienter, a connection with the purchase or sale of a security, reliance, economic loss, and loss causation. *Id.* Neither Seguin's complaints about Northrop's arbitration policy nor her complaints about violations of § 1514A(e) involve any of these elements. Simply put, the DOL's interpretation is contrary to law. Complaints like Seguin's do not constitute shareholder fraud and, thus, are not afforded whistleblower protection under § 1514A.

2.

Even if we were to accept the DOL's interpretation of the sixth enumerated category, for the DOL's argument to prevail, there must be substantial evidence to support the ALJ's conclusion that Seguin's beliefs were objectively reasonable. Given the DOL's theory of protected activity, Seguin's beliefs that (1) Northrop's arbitration policy violated § 1514A(e) and (2) the violation constituted shareholder fraud must both be reasonable. *Welch*, 536 F.3d at 275. To satisfy the objective reasonableness requirement, an employee must show that "a reasonable person in his position would have believed that the conduct constituted a violation." *Livingston*, 520 F.3d at 352.

a.

A reasonable person in Seguin's position, however, could not believe that Northrop's conduct violated § 1514A(e) for at least two independently sufficient reasons. First, a reasonable person could not believe that the Conflict of Interest form incorporated

13

Northrop's arbitration policy. The form does not even mention Northrop's arbitration policy. The form references Northrop's Standards of Business Conduct, but that document likewise does not mention the arbitration policy. There is no substantial evidence in the record from which Seguin could reasonably believe that the Conflict of Interest form had the effect of tricking her into agreeing to the arbitration policy. The DOL's reasoning, which the ARB also adopted, conflates the subjective and objective belief requirements in a way that renders the objective reasonable belief requirement meaningless. That reasoning is inconsistent with the law.

This objectively reasonable understanding was confirmed when Northrop employees explicitly reiterated to Seguin that the Conflict of Interest form has "nothing to do" with the arbitration policy. J.A. 1241–42. Seguin's alleged belief to the contrary was all the more objectively unreasonable in light of this confirmation. *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (Putative whistleblower's "beliefs were not initially reasonable as beliefs in shareholder fraud and they became less reasonable as he was given explanations [by company employees].").

Second, even if the Conflict of Interest form incorporated Northrop's arbitration policy—which it does not—a reasonable person in Seguin's position could not believe that the policy violated § 1514A(e). As noted above, § 1514A(e) prohibits arbitration of SOX whistleblower claims. The plain language of Northrop's arbitration policy indicates it does not apply to claims "as to which an agreement to arbitration . . . is prohibited by law . . . ." J.A. 1535. By its own terms, the arbitration policy does not apply to SOX

whistleblower claims. Even under a substantial evidence review, it was objectively unreasonable for Seguin to believe otherwise.

b.

Additionally, even if Seguin could reasonably believe a violation of § 1514A(e) occurred, no reasonable person in Seguin's position could believe that Northrop's alleged violation of § 1514A(e) constituted shareholder fraud. To be objectively reasonable, a whistleblower is not required to strictly plead all the elements of a shareholder fraud cause of action. However, the reasonableness of an employee's belief must be considered in the context of what is required to establish shareholder fraud. This reading of the statute is consistent with the reading adopted by other circuits and our own. *See Rocheleau v. Microsemi Corp., Inc.*, 680 F. App'x 533, 535 (9th Cir.), *cert. denied,* 138 S. Ct. 166 (2017) (noting that a complaining employee's theory of securities fraud is objectively reasonable only if it approximates the basic elements of a securities fraud claim); *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 668 (4th Cir. 2015) (noting that a whistleblower's theory of fraud should at least approximate the basic elements of fraud); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 222 n.6 (2d Cir. 2014) ("Thus, the statutory language suggests that, to be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific provisions."); *Day*, 555 F.3d at 55.[9] Consequently, an employee, like Seguin, who asserts protected

---

[9] In *Sylvester*, the ARB questioned this approach to the protected activity requirement, finding that courts improperly "merged the elements required to prove a violation of a fraud statute . . . with the requirements a whistleblower must allege or (Continued)

15

status on the basis of complaints about shareholder fraud must, at a minimum, "have an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss." *Day*, 555 F.3d at 55. As discussed in Section II.B.1 above, none of Seguin's complaints about Northrop's arbitration policy approximate these elements. Consequently, we find that substantial evidence[10] does not support the conclusion that it was objectively reasonable to believe that a violation of § 1514A(e) constitutes shareholder fraud.[11]

---

prove to engage in protected activity." 2011 WL 2165854, at *20. The ARB insisted that an employee can have an objectively reasonable belief of a violation of the laws in § 1514A(a)(1) even if the employee did not prove or approximate the specific elements of fraud. *Id*. The response to *Sylvester* has been varied. Some circuits have followed *Sylvester*'s approach, affording the decision varying degrees of deference. *See Beacon v. Oracle America, Inc.*, 825 F.3d 376, 380 (8th Cir. 2016) (adopting *Sylvester* without specifying a level of deference); *Rhinehimer v. United States Bancorp Inves., Inc.*, 787 F.3d 797, 806 (6th Cir. 2015) (adopting *Sylvester* applying *Skidmore* deference); *Wiest v. Lynch*, 710 F.3d 121, 133 (3d Cir. 2013) (adopting *Sylvester* applying *Chevron* deference). In contrast, the Second Circuit emphasized that *Sylvester*'s approach runs contrary to the statutory language of § 1514A(a)(1). *Nielsen*, 762 F.3d at 222 n.6. Other circuits, including this Court, have continued to insist on approximating the elements of fraud without addressing the impact of *Sylvester*. *Rocheleau*, 680 F. App'x at 535; *Jones*, 777 F.3d at 668. Regardless of the deference afforded to the ARB (and *Welch* indicates that this Court should afford *Chevron* deference to ARB decisions interpreting § 1514A), the plain text of the statute compels us to conclude that the reasonableness of an employee's belief must be measured against the specific statutory provisions in § 1514A(a)(1) requiring approximation of the elements of shareholder fraud in this case.

[10] To the extent Seguin may have subjectively believed another statutory provision in § 1514A(a)(1) was violated, substantial evidence does not support a conclusion that it was objectively reasonable to believe that a violation of § 1514A(e) constitutes a violation of any of the other five enumerate categories of § 1514A(a)(1).

[11] Northrop also argued that the ARB erred in holding that Seguin's alleged protected activity was a contributing factor in her termination and that the ARB applied (Continued)

16

III.

In conclusion, the SOX whistleblower provision provides important protections for shareholders of public companies. But Congress limited the categories of activity to which the provision applies. The DOL's position would in effect ignore the parameters of the statute and improperly expand the scope of the provision beyond the plain limitations in its text. Because we conclude that Seguin did not engage in protected activity under § 1514A(a)(1), we grant Northrop's petitions for review, vacate the orders of the ARB and the ALJ and remand the case to the ALJ with instructions to dismiss Seguin's administrative complaint and enter judgment in favor of Northrop. [12]

*GRANTED, VACATED AND REMANDED with INSTRUCTIONS*

---

the wrong legal standard in assessing Northrop's defense. Because we conclude that Seguin did not engage in protected activity under § 1514A(a)(1), we need not reach these issues.

[12] We also deny Seguin's motion to dismiss Northrop's case as untimely.