*La Belle v. Barclays Cap. Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand twenty-four.

PRESENT:

> PIERRE N. LEVAL,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————

BRIAN LA BELLE,

> *Plaintiff-Appellant,*

> v.                                                                No. 23-448

BARCLAYS CAPITAL INC.,

> *Defendant-Appellee.*

———————————————————————

| For Plaintiff-Appellant: | STEVEN BARENTZEN, The Law Office of Steven Barentzen, Washington, DC. |
|---|---|
| For Defendant-Appellee: | ELIZABETH K. MCMANUS, Ballard Spahr LLP, Philadelphia, PA (Ronald M. Green, John F. Fullerton III, James D. Mackinson, Epstein Becker & Green, P.C., New York, NY, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 24, 2023 judgment of the district court is **AFFIRMED**.

Brian La Belle appeals from the district court's grant of summary judgment in favor of his former employer, Barclays Capital Inc. ("Barclays"), on La Belle's claim of retaliation under section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A.[1]   La Belle argues that the district court erred in concluding that he failed to establish a *prima facie* case of retaliation and points to five purported "whistleblows" that he claims constituted protected activity that led Barclays to

---

[1] On appeal, La Belle does not advance any arguments as to how the district court erred in denying his cross-motion for summary judgment.   He has abandoned any such claim by failing to address it in his appellate brief.   *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 428 (2d Cir. 2023).

2

take adverse employment actions against him.   We review a district court's grant of summary judgment *de novo*, *see Kee v. City of New York*, 12 F.4th 150, 157–58 (2d Cir. 2021), and will affirm when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

To establish a *prima facie* Sarbanes-Oxley whistleblower retaliation claim, a plaintiff must demonstrate that "(1) he . . . engaged in a protected activity; (2) the employer knew that he . . . engaged in the protected activity; (3) he . . . suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."   *Bechtel v. Admin. Rev. Bd.*, 710 F.3d 443, 451 (2d Cir. 2013).

For a plaintiff's activity to be "protected" under the first prong, he must have provided information about conduct that he "reasonably believe[d] constitute[d] a violation of [18 U.S.C. §§] 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders" to certain specified categories of recipients.   18 U.S.C. § 1514A(a)(1).   This "reasonable belief" standard "contains both subjective and objective components."   *Nielsen v. AECOM Tech. Corp.*, 762

3

F.3d 214, 221 (2d Cir. 2014). We have clarified that while "an alleged whistleblowing employee's communications need not 'definitively and specifically' relate to one of the listed categories of fraud or securities violations in [section] 1514A in order for that employee to claim protection," *id.* at 224, section 1514A still requires "plausible allegations that the whistleblower reported information based on a reasonable belief that the employer violated *one of the enumerated provisions* set out in the statute," *id.* at 221 n.6 (emphasis in original). Put differently, in order for a purported whistleblower's belief to be considered reasonable, it "cannot exist wholly untethered from these specific provisions." *Id.*

As to the fourth prong, although a whistleblower need not show that his "protected activity was a significant, motivating, substantial, or predominant factor in the adverse personnel action," he bears the burden of "prov[ing] that his protected activity was *a* contributing factor in the unfavorable personnel action." *Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 449–50 (2024) (emphasis added and internal quotation marks omitted).

La Belle's primary argument is that the district court erred in concluding that his reports regarding suspected violations of Barclays' mandatory block leave

("MBL") program were not protected disclosures.[2]  Specifically, La Belle takes issue with the district court's conclusion that – because MBL is an internal Barclays' policy, not an SEC rule or regulation – La Belle failed to allege "any facts plausibly suggesting that this supposed misconduct implicated *any* of the enumerated provisions in [section] 1514A."  Sp. App'x at 27 (internal quotation marks omitted).

We see no reason to disturb the district court's conclusion that La Belle failed to establish a whistleblower retaliation claim on this basis.   La Belle concedes that MBL is not a legal requirement, but rather an internal Barclays policy.   And while La Belle asserts that, at the time he made the reports, he subjectively believed that MBL was a regulatory requirement and that he was reporting violations of an SEC rule or regulation, such a belief was not objectively reasonable insofar as MBL is *not* a legal requirement and is therefore "wholly untethered" from the enumerated provisions in section 1514A.  *Nielsen*, 762 F.3d at 221 n.6; *see Samaroo v. Bank of N.Y. Mellon*, No. 22-2041, 2023 WL 3487061, at *1 (2d Cir. May 17, 2023) (holding that plaintiff's allegations concerning purported internal ethical violations did not

---

[2] Pursuant to Barclays' MBL policy, certain individuals were required "to take ten consecutive business days per year out of the office and without access to Barclays' systems," on the theory that this policy "protects the firm from undetected fraud and embezzlement by individual employees because most frauds or embezzlements require the continued presence of the wrongdoer."   Sp. App'x at 3 (internal quotation marks omitted).

"plausibly suggest[] that this supposed misconduct implicated *any* of the enumerated provisions in [s]ection 806," and therefore "his claim [was] insufficient as a matter of law" (internal quotation marks omitted)); *Kantin v. Metro. Life Ins. Co.*, 696 F. App'x 527, 528 (2d Cir. 2017) (suggesting that concerns that "do not sound in fraud and are wholly unrelated to any of the provisions enumerated in [section] 1514A" cannot support a whistleblower claim); *see also Northrop Grumman Sys. Corp. v. U.S. Dep't of Lab.*, 927 F.3d 226, 235 n.9 (4th Cir. 2019) ("[T]he plain text of the statute compels us to conclude that the reasonableness of an employee's belief must be measured against the specific statutory provisions in [section] 1514A(a)(1).").

La Belle's attempts to shoehorn his MBL claim into one of the enumerated provisions of section 1514A fare no better. For example, La Belle's argument that his disclosures encompassed violations of sections 13(b)(2)(B) and 13(b)(5) of the Securities and Exchange Act of 1934 and securities regulation 17 C.F.R. § 240.13.a-15(a) fails for the reason set forth by the district court – namely, that they pertain to controls specifically related to financial reporting, which MBL is not. *See* 17 C.F.R. § 240.13a-15(f) (explaining that the rule's purpose is "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements"); *see also In re Mgmt.'s Rep. on Internal Control*

6

*over Fin. Reporting & Certification of Disclosure in Exch. Act Periodic Reps.*, Release No. 8238, 80 S.E.C. Docket 1014, 2003 WL 21294970, at \*7–8 (June 5, 2003). Nor is there any support whatsoever for La Belle's contentions that he made his MBL reports because he reasonably believed that fraudulent information had been provided to the SEC in the form of false MBL attestations or that Barclays employees may have worked through their MBLs to avoid detection of fraudulent activities.

As to the remaining "whistleblows" that La Belle identifies, we agree with the district court that he has failed to make a *prima facie* case as to each.

*First*, La Belle has not plausibly shown that his communications regarding employees' use of personal cell phones for Barclays-related work constituted protected activity. As noted above, in order for an employee's communication to constitute a protected activity, the employee must have "reasonably believe[d]" that the conduct he described violates one of section 1514A's enumerated provisions. 18 U.S.C. § 1514A(a)(1). While, on appeal, La Belle contends that he raised concerns regarding the use of personal devices "to alert Barclays to the fact that electronic communications conducted on personal devices were not being recorded and preserved as required by [s]ection 17(a) of the Exchange Act and Rule 17a-4(b)(4)," La Belle Br. at 45–46, that contention is belied by the record.

Indeed, the record reflects that, when discussing how La Belle and his team were using their personal devices with Barclays personnel, La Belle merely confirmed that he was not "doing any hedging or security work" on his personal device, J. App'x at 1576, and that his team was communicating through "the Good App," *id.* at 2229, a Barclays-approved application. Moreover, in his reply memorandum in support of his motion to amend the complaint, La Belle acknowledged that – on the occasions when he made requests for firm-issued devices – he did not subjectively believe that his use of a personal device violated the securities laws. *See id.* at 66 ("Plaintiff has *learned during discovery*" that Barclays' policy regarding firm-issued devices was driven, "in part, by the SEC's and FINRA's record retention rules." (emphasis added)). La Belle's argument that this Court should look past this "poorly constructed sentence" in his reply because the "actual contemporaneous record . . . makes clear that [La Belle] reasonably believed he was reporting a violation of the securities law," La Belle Br. at 49, is unsupported. *See id.* at 45–46 (conceding that it is "not apparent from the face" of his requests for a firm-issued device that his communications conveyed any concern about the securities laws).

*Second*, the district court did not err in concluding that La Belle failed to establish a *prima facie* case in connection with Barclays' transactions with "Client

8

1" or "Client 2." As to the Client 1 transaction, La Belle claims that he "reasonably believe[d] that he was reporting fraudulent or illegal activity" when he raised concerns that a third-party report prepared in connection with the transaction underrepresented the costs associated with the proposed renovation of a portfolio of hotels, thereby resulting in fraud on shareholders. *Id.* at 51–53. This claim is unavailing based on the contemporaneous record. Indeed, the record reflects that La Belle made statements *endorsing* the final version of the report once certain cost adjustments had been made. We therefore agree with the district court that no reasonable factfinder could conclude that La Belle "reasonably believed" that he was reporting fraudulent or illegal activity when he expressed concerns about the initial cost estimate in the report.

We likewise agree that no reasonable juror could conclude that the concerns La Belle expressed about risk assessments related to a contemplated transaction with Client 2 constituted protected activity. Although it is true that La Belle told other employees that he believed the contemplated transaction carried significant risk, these communications fail to support any inference that La Belle believed he was reporting *fraud*. To the contrary, La Belle's stated intention in raising these concerns was to protect his own standing and reputation at Barclays, rather than to identify any perceived misconduct on the part of the company. On this record,

9

La Belle could not have reasonably believed that any alleged "massaging" of these risk assessments – which were only considered internally as part of a comprehensive evaluation of whether to pursue the deal – would result in fraud against shareholders. *See Nielsen*, 762 F.3d at 223 (concluding that "bald statement[s]" that certain practices potentially expose a company to extreme financial risk are "too tenuous" to make out a claim that shareholders were defrauded under section 1514A). We therefore agree with the district court that La Belle failed to identify cognizable protected activity in connection with either client transaction.

*Finally*, La Belle's claim regarding his July 11, 2018 report that one of his employees sent an email concerning securities transactions without a license plainly fails because La Belle never demonstrated that this report was a contributing factor in his termination. Here, the uncontroverted evidence clearly demonstrates that Barclays had made the decision to terminate La Belle by June 19 – weeks before La Belle's July 11 report to the Barclays compliance department. *See Murray*, 144 S. Ct. at 454 (noting that section "1514A requires . . . the intent to take some adverse employment action against the whistleblowing employee '*because of*' his protected whistleblowing activity" (emphasis added)). Contrary to La Belle's claims, no reasonable jury could conclude either that La Belle's

10

passing mentions of this issue prior to July 11 constituted "whistleblows" or that Barclays' decision to terminate La Belle was not made until late July. We therefore agree that La Belle failed to demonstrate that the July 11 report was a contributing factor in his termination.

We have considered La Belle's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11